**David L. GIBBS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–1010–CR–1074.**

Court of Appeals of Indiana.

June 30, 2011.

---

Kimmerly A. Klee, Greenwood, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, David L. Gibbs (Gibbs), appeals his conviction for arson, a Class B felony, Ind.Code § 35–43–1–1.

We reverse and remand for a new trial.

### ISSUES

Gibbs raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred in declaring him competent to stand trial; and

(2) Whether the trial court erred in allowing the State to amend its Information after it read the charges to the jury during *voir dire.*

### FACTS AND PROCEDURAL HISTORY

In May of 2009, Gibbs lived by himself in an apartment within a multi-family residence containing three different apartments in Indianapolis, Indiana. On May 7, 2009, shortly before 4 p.m., Gibbs rode to a nearby Shell gas station on his bike, found a blue jug in a trash can, and filled the jug with gasoline. Gibbs then returned to his apartment and lit four separate fires inside. After lighting the fires, Gibbs "sprint[ed]" from his home towards the nearby business district. (Transcript p. 105).

Gibbs' neighbors in the multi-family residence, Mary Tallie (Tallie) and Angela Anthony (Anthony), saw Gibbs run away from the building and became concerned. Anthony yelled at Gibbs to stop, but he did not respond. Subsequently, Anthony and Tallie heard the smoke alarm in Gibbs' apartment and saw smoke coming out of the window. They called 9–1–1 and flagged down a fire truck that happened to be passing their street. When Gibbs

heard the fire engine sirens, he returned to the apartment.

After the Indianapolis Fire Department extinguished the fires, the Battalion Chief of the Fire Department, Chris Pitts (Chief Pitts), called in arson investigators to analyze the scene. The investigators ruled out accidental causes because there was evidence that the four fires were started independently and there were no outlets or electrical wiring that might have accidentally caused at least two of the fires. As a result, Indianapolis Metropolitan Police Department Detective David Kinsey (Detective Kinsey) arrested Gibbs and conducted a search of his person incident to the arrest. In this search, Detective Kinsey found a lighter and half of a book of matches in Gibbs' pocket.

On May 11, 2009, the State filed an Information charging Gibbs with three Counts of arson as Class B felonies, I.C. § 35-43-1-1. Count I charged that Gibbs:

did, by means of fire, knowingly damage property, that is: a residence located at 32 North Rural Street, of Mary Tallie, under circumstances that endangered human life, that is: setting a fire and leaving the residence while other occupants were in the building.

(Appellant's App. p. 26). Count II contained the same language as Count I, only relating to Anthony; Count III charged that Gibbs:

did, by means of fire, knowingly damage property, that is: 32 North Rural Street, of J.L. Hair Realty, without the consent of J.L. Hair Realty, in which the pecuniary loss was at least five thousand dollars ($5,000).

(Appellant's App. p. 27).

On June 10, 2009, prior to trial, Gibbs filed a motion requesting a psychiatric examination to determine his competence to stand trial. The trial court granted the motion and appointed two psychologists, Doctors Stephanie Callaway (Dr. Callaway) and Shelvy Keglar (Dr. Keglar), to examine Gibbs. Following their examinations, both psychologists submitted written reports to the trial court and testified at a competency hearing held on August 11, 2009. Dr. Callaway determined that Gibbs was incompetent to stand trial and effectively assist in his defense because he was "not able to stay on task, [ ] was very irritable and easily agitated and did not even seem to be able to do basic things like take care of his hygiene." (Tr. p. 6). Dr. Keglar, however, considered Gibbs competent to stand trial.

On August 24, 2009, as a result of the competency hearing, the trial court filed an Order determining Gibbs' lack of comprehension to stand trial. The trial court ordered Gibbs committed to the Division of Mental Health and Addiction for competency restoration services. In its Order, the trial court provided that the sheriff would return Gibbs to the trial court for trial whenever Gibbs attained the "ability to understand the proceedings and to assist in the preparation of a defense." (Appellant's App. p. 44).

Prior to a subsequent status hearing on December 16, 2009, the trial court realized that Indiana Code section 35-36-3-1, which concerns the procedures for declaring a defendant competent for trial, requires an examination by a psychiatrist as well as a psychologist prior to a competency hearing. Accordingly, the trial court appointed a psychiatrist, Dr. Phillip Coons (Dr. Coons), to examine Gibbs. When Dr. Coons went to the Marion County Jail, though, Gibbs refused to speak with him. Instead, Dr. Coons submitted a written report to the trial court based mostly on a prior competency evaluation conducted in June of 2008 for a non-related case. At the December 16, 2009 status hearing, the

trial court again determined that Gibbs was incompetent to stand trial and issued an Order to transport Gibbs to Logansport State Hospital (Logansport) for psychiatric care.

On April 19, 2010, the Family and Social Services Administration (FSSA) at Logansport submitted a status report declaring that Gibbs had regained competency for trial, and the trial court issued an Order requiring Gibbs to return to Marion County. On May 25, 2010, Gibbs again filed a motion for psychiatric examination to determine competency to stand trial, and on May 26, 2010, the trial court conducted a status hearing on his motion. At the conclusion of the hearing, the trial court took Gibbs' motion under advisement and then formally denied it on August 19, 2010.

On August 19, 2010, a jury trial was held. Before the commencement of the trial, the State filed a motion to amend the charging Information to clarify that the residences Gibbs had damaged were part of a multiple family residence and to change Count III to a Class D felony rather than a Class B felony based on a reduced estimation of J.L. Hair Realty's pecuniary losses. After the State's amendments, Count I charged that: "David Gibbs, on or about May 7, 2009, did, by means of fire, knowingly damage property, that is: a residence located at 32 North Rural Street, of Mary Tallie, under circumstances that endangered human life, that is: setting a fire in a part of a multiple family residence and leaving while other occupants were still in the building." (Appellant's App. p. 69). Count III charged that: "David Gibbs, on or about

May 7, 2009, did, by means of fire, knowingly damage property, that is: 32 North Rural Street, of J.L. Hair Realty, without the consent of J.L. Hair Realty, in which the pecuniary loss was at least two hundred fifty dollars." (Appellant's App. p. 70). The trial court, as well as Gibbs' counsel, agreed to the amendments, so the trial court read the Amended Information to the jury during *voir dire.*

After the trial court read the Amended Information to the jury, the State moved to amend the Information again to omit Tallie and Anthony's names. Gibbs objected to the amendment, claiming that it would substantially alter his defense, but the trial court granted the State's motion over his objection.[1] Following the presentation of evidence, the jury found Gibbs guilty of all three Counts of arson.

On September 7, 2010, the trial court vacated Gibbs' convictions for Counts II and III, but sentenced Gibbs to sixteen years with six years suspended and one year of probation on Count I. Of Gibbs' ten year executed sentence, the trial court ordered eight years served in the Indiana Department of Correction (DOC), followed by two years in the mental health component of Community Corrections. The trial court also recommended that Gibbs continue to receive mental health evaluation and treatment in the DOC.

Gibbs now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Gibbs' Request for Psychiatric Re-evaluation*

■ Gibbs first argues that the trial court committed error in determining that

---

1. The final versions of Counts I and II read to the jury both stated that: "David Gibbs, on or about May 7, 2009, did, by means of fire, knowingly damage property, that is: a residence located at 32 North Rural Street, under circumstances that endangered human life, that is: setting a fire in a part of a multiple family residence and leaving while other occupants were still in the building." (Appellant's App. pp. 84–5).

he was competent to stand trial. We have previously determined that "the conviction of an incompetent defendant is a denial of federal due process and a denial of a state statutory right as well." *Faris v. State*, 901 N.E.2d 1123, 1125 (Ind.Ct.App.2009). A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. *Mast v. State*, 914 N.E.2d 851, 856 (Ind.Ct.App.2009), *trans. denied.* Further, Indiana Code section 35–36–3–1(a) mandates that:

> If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested:
>
> > (1) psychiatrists; or
> >
> > (2) psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology.
>
> At least one (1) of the individuals appointed under this subsection must be a psychiatrist.... The individuals who are appointed shall examine the defendant and testify at the hearing as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense.

■ However, the right to a competency hearing is not absolute. *Mast*, 914 N.E.2d at 856. Instead, such a hearing is required only when a trial court is confronted with evidence creating a reasonable or *bona fide* doubt as to a defendant's competency. *Id.* The decision regarding whether there is a reasonable doubt is within the trial court's discretion and de-

pends upon the specific facts and circumstances of each case. *Id.* We will only reverse the trial court's decision if we find that the trial court has abused its discretion. *McManus v. State*, 814 N.E.2d 253, 259–61 (Ind.2004). The trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Stuff v. Simmons*, 838 N.E.2d 1096, 1099 (Ind.Ct.App.2005).

■ Gibbs' primary argument relates to the trial court's failure to follow the procedure established by I.C. § 35–36–3–1(a). Specifically, I.C. § 35–36–3–1(a) requires a trial court to appoint two or three psychologists or psychiatrists—but at least one psychiatrist—to examine a defendant prior to a competency hearing. In this case, the trial court did not appoint a psychiatrist until months after Gibbs' competency hearing on August 11, 2009. Moreover, the psychiatrist, Dr. Coons, submitted a written report to the trial court even though he had never actually met with Gibbs.

■ We agree with Gibbs that this procedure violates the plain language of I.C. § 35–36–3–1(a), which requires an examination by a psychiatrist *before* a competency hearing. However, we conclude that it was a harmless error because the trial court did not declare Gibbs competent to stand trial as a result of the error. Following Dr. Coons' report, the trial court conducted a status hearing on December 16, 2009 and determined that Gibbs remained incompetent. The purpose of I.C. § 35–36–3–1(a) is to avoid the conviction of an incompetent defendant, so it follows that an error is harmless where it does not result in the conviction of an incompetent defendant.

Further, it is not material that, other than the August 11, 2009 competency hearing, the trial court did not hold a competency hearing before declaring Gibbs competent. As stated above, the right to a competency hearing is not absolute. *Mast*, 914 N.E.2d at 856. Instead, "such a hearing is required only when a trial judge is confronted with evidence creating a reasonable or *bona fide* doubt as to a defendant's competency, which is defined as whether a defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him." *Id.* Moreover, the supreme court held in *Cotton* that a trial court can determine competency based on pre-trial reports and the defendant's conduct at trial. *Cotton v. State*, 753 N.E.2d 589, 591 (Ind.2001). Before the August 11, 2009 competency hearing, the trial court did have a reasonable doubt as to Gibbs' competency. Several months passed, though, before the FSSA submitted a report to the trial court on April 19, 2010, declaring that Gibbs was competent to stand trial. At that point there was no evidence that the trial court had reason to doubt Gibbs' competency.

It is especially notable that after the FSSA submitted its report on April 19, 2009, Gibbs himself made statements that led the trial court to believe he was competent. At his status hearing on May 26, 2010, Gibbs demonstrated that he understood what he was charged with, the evidence against him, the roles of his lawyer and the prosecutor, and that he had the right to waive a jury trial. Gibbs specifically stated "I'm ready for this case to move on." (Tr. p. 22). Then, when the trial court expressed that "one of the things that concern[ed] it [was] whether or not [Gibbs] [knew] enough about what [was] going on and [was] coherent enough to help [his] lawyer," Gibbs responded: "I can work with my lawyer." (Tr. pp. 23,

24). Gibbs' lawyer also stated "I think [Gibbs] would be able to work with me" and "I have no doubt that he understands who everyone is in this courtroom, where he is, the time and date." (Tr. pp. 25, 26).

Then, on the morning of his jury trial, Gibbs' lawyer stated "I believe that I am prepared to go forward today. I think that the only—the issues that may be between my client and I are somewhat ... [T]here may be a different approach as to strategy and I think that may be the remaining issue that exists." (Tr. p. 34). When the trial court asked Gibbs if he was ready for trial, Gibbs said "[y]es." (Tr. p. 36). Gibbs also indicated that he understood the nature of a jury trial, the nature of the State's plea agreement offer and the potential sentencing ranges for his charges.

We conclude that the trial court here did not abuse its discretion because it based its competency determination on the FSSA's pre-trial report and Gibbs' conduct both prior to trial and on the day of trial. This decision was reasonable based on Gibbs' many statements that he understood the nature of the proceedings and the charges against him, as well as his counsel's affirmations that he could adequately assist in the preparation of his defense.

## II. *The Amendment to Gibbs' Charging Information*

Next, Gibbs argues that the trial court erred by allowing the State to amend his charging Information after the trial court had read it to the jury during *voir dire.* In response, the State argues that Gibbs waived his claim by failing to move for a continuance after the trial court allowed the amendments over Gibbs' objections.

In Indiana, amendments to an Information are governed by Indiana Code section

35–34–1–5, which distinguishes between substantive amendments and amendments to form. I.C. § 35–34–1–5(b) governs substantive amendments and provides:

> The indictment or [I]nformation may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
>
>        \*      \*      \*
>
> (2) before the commencement of trial; if the amendment does not prejudice the substantial rights of the defendant.

In contrast, I.C. § 35–34–1–5(c) concerns amendments to form and states: "Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or [I]nformation in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." As stated in these provisions, substantive amendments are only allowed "before the commencement of trial," whereas the trial court may allow an amendment to the form of an Information at any time, so long as it does not prejudice the substantial rights of the defendant. *See* I.C. § 35–34–1–5(b) and (c).

■ We have previously distinguished substantive amendments and amendments to form through the following standard:

> [A]n amendment is one of form, not substance, if both (a) a defense under the original [I]nformation would be equally available after the amendment, and (b) the accused's evidence would apply equally to the [I]nformation in either form. And an amendment is one of substance only if it is essential to making a valid charge of the crime.

*Fields v. State,* 888 N.E.2d 304, 310 (Ind. Ct.App.2008); *see also Jones v. State,* 863 N.E.2d 333, 337 (Ind.Ct.App.2007). Whether an amendment is a matter of substance or form is a question of law, which we review *de novo. Fields,* 888 N.E.2d at 310.

Based on the above standard, we conclude that the State's amendment to Gibbs' charging Information was substantive. Counts I and II of the version of the Information that the State read to the jury charged that "Gibbs did, by means of fire, knowingly damage property . . . of Mary Tallie" and "Angela Anthony." (Appellant's App. pp. 26–7). As Gibbs contended in his objection to the State's amendment, he had planned to argue at trial that he was not guilty of the charges as they were originally stated because he did not actually cause damage to Tallie and Anthony's apartments. Instead, the fires only damaged Gibbs' apartment. When the State amended the Information to omit Tallie and Anthony's names from the charges, he was no longer able to make the same defense. Accordingly, the amendment was substantive because his defense was not "equally available after the amendment" and his evidence did not "apply equally to the [I]nformation in either form." *Fields,* 888 N.E.2d at 310.

■ Because we conclude that the amendment was substantive, we also conclude that the trial court erred in allowing the State to amend the charging Information after it had read the original charges to the jury. Indiana Code section 35–34–1–5(b) specifically states that substantive amendments must be made "prior to the commencement of trial." Our research does not reveal any cases in Indiana that have explicitly clarified when a jury trial has 'commenced' for the purposes of this provision. Our review of other states, however, indicates that it is a widely accepted rule that a jury trial commences with *voir dire. U.S. v. Manfredi,* 722 F.2d

519, 524 (9th Cir.1983); *Cummings v. Simmons*, 167 Ill.App.3d 544, 118 Ill.Dec. 352, 521 N.E.2d 634, 637 (1988) (declaring that a trial has commenced if the jury has been examined and sworn in); *Frazee v. Ellis Bros., Inc.*, 113 Ohio App.3d 828, 682 N.E.2d 676, 678 (1996). Because Gibbs' trial commenced with *voir dire*, we conclude that the trial court erred in allowing the State to amend his Information after that point.

■ Next, though, we must address whether Gibbs' waived his claim by failing to move for a continuance after the trial court allowed the amendment over his objection. While there are many cases that address the issue of whether a defendant has waived a claim regarding a substantive amendment made *prior* to trial, we cannot find any cases concerning amendments made after the commencement of trial. However, we have found analogous cases concerning instances where a trial court

has allowed an amendment not authorized by statute.

In *Fajardo* and *Fuller*, both the Indiana Supreme Court and this court confronted factual situations in which a trial court's allowance of a late amendment was not authorized by statute. *Fajardo v. State*, 859 N.E.2d 1201 (Ind.2007), *superseded by statute*, I.C. § 35–34–1–5, *as recognized in Wilson v. State*, 931 N.E.2d 914 (Ind.Ct. App.2010); *Fuller v. State*, 875 N.E.2d 326, 330 (Ind.Ct.App.2007), *superseded by statute*, I.C. § 35–34–1–5, *as recognized in Wilson v. State*, 931 N.E.2d 914 (Ind.Ct. App.2010).[2]

*Fajardo* does not explicitly address the question of waiver, but the *Fajardo* court makes important distinctions between amendments that are untimely and amendments that violate the substantial rights of defendants. There, the supreme court found that "[s]everal cases [had] permitted amendments related to matters of substance simply on grounds that the changes

2. The law regarding substantive amendments has changed significantly over the last five years, and the version of I.C. § 35–34–1–5 that our supreme court interpreted in *Fajardo* and we interpreted in *Fuller* is considerably different than the version of I.C. § 35–34–1–5 we are interpreting today. Prior to the supreme court's decision in *Fajardo*, it was well-established that case law permitted the State to make untimely substantive amendments if they would not prejudice the defendant's substantial rights. *Wilson*, 931 N.E.2d at 917. In 2007, though, the supreme court held in *Fajardo* that the version of I.C. § 35–34–1–5 applicable at the time required the State to make amendments of substance prior to thirty days before the omnibus date, regardless of prejudice to the defendant. *Fajardo*, 859 N.E.2d at 1208. We followed *Fajardo* in *Fuller* and held that the trial court there had erroneously permitted the State to amend the charging Information because the amendment was one of substance that was filed seven days after the omnibus date, rather than thirty days before the omnibus date. *Fuller*, 875 N.E.2d at 330.

More importantly for the purposes of our analysis here, the amendments at issue in *Fajardo* and *Fuller* were not authorized by I.C. § 35–34–1–5 as it was interpreted at that point in time. Therefore, the facts of *Fuller* are analogous to the instant case where the trial court's amendment of Gibbs' Information was not authorized by statute. In response to *Fajardo* and *Fuller*, the General Assembly amended Indiana Code section 35–34–1–5 to allow amendments of substance before the commencement of trial, absent prejudice to the substantial rights of the defendant. *Wilson*, 931 N.E.2d at 917. This version of I.C. § 35–34–1–5 is controlling today.

We recognize that the General Assembly's amendments to I.C. § 35–34–1–5 superseded the interpretations of the previous version of I.C. § 35–34–1–5 in both *Fajardo* and *Fuller* that substantive amendments had to be made thirty days prior to the omnibus date. Nevertheless, we find both cases persuasive in their analysis of the separate issue of whether a defendant must move for a continuance if he or she objects to an amendment not authorized by statute.

did not prejudice the substantial rights of the defendant, without regard to whether or not the amendments were untimely." *Fajardo*, 859 N.E.2d at 1206. According to the supreme court, this approach was improper. Instead, the court determined that, "as to an amendment relating to matters of substance, the statute is clear: the only prerequisite is that it must be filed the specified number of days before the omnibus date...." *Id.* at 1207. Later in the Opinion, the supreme court vacated Fajardo's sentence on the premise that the amendment to his charges was substantive and untimely. *See id.* at 1208. The court did not address waiver, but through this analysis it indicated that the timeliness of an amendment is a predominant consideration in determining whether a trial court erred in allowing an amendment.

In *Fuller*, we analyzed the supreme court's decision in *Wright* and determined that the *Fajardo* decision had implicitly overruled *Wright* to the extent that *Wright* "could be read as requiring a defendant to move for a continuance, in addition to objecting, before being permitted to challenge an untimely substantive amendment on appeal." *Fuller*, 875 N.E.2d at 331. In *Wright*, the State charged the defendant, Wright, with murder. *Wright v. State*, 690 N.E.2d 1098, 1103 (Ind.1997). After the omnibus date had passed, however, the State amended the Information over Wright's objections in order to charge him with accessory liability instead of principal liability. *Id.* at 1103. On appeal, the supreme court held, without analyzing whether the amendment was one of form or substance,

> Had defendant seriously believed that the amendment of the charges prejudiced him in any way, he should have requested a continuance to further evaluate and prepare his case in light of the amendments. Having failed to request a continuance after the court granted

the motion to amend, defendant has waived this issue on appeal.

*Id.* at 1104. In *Fuller*, we compared this conclusion in *Wright* to the *Fajardo* court's decision and held that Fuller was not required to move for a continuance in order to preserve his claim of error because *Fajardo* had overruled *Wright*. Our reasoning was:

> [A]lthough the *Fajardo* opinion specifically notes that the defendant had objected to the State's untimely amendment of the charging [I]nformation, it makes no mention of whether the defendant moved for a continuance after the objection was overruled. It nowhere states that the defendant was required to move for a continuance.... In light of (1) *Fajardo's* clarification that the validity of an amendment of substance under the former statute turns solely upon the timing of the amendment, not prejudice to the defendant, (2) its criticism of cases very similar to *Wright*, and (3) its failure to mention whether the defendant in the case had moved for a continuance, we conclude that Fuller was not required to move for a continuance in order to preserve his objection.

*Fuller*, 875 N.E.2d at 331–32.

Subsequent cases decided after the General Assembly's amendment of I.C. § 35–34–1–5 have seemed to contradict *Fuller* in holding that a defendant is required to make a motion for a continuance in order to preserve a claim. *See, e.g., Wilson*, 931 N.E.2d at 918. In Wilson, which is advanced by the State, we held that "under the amended version of I.C. § 35–34–1–5, a defendant's failure to request a continuance after a trial court allows a *pre-trial* substantive amendment to the charging [I]nformation over defendant's objection results in waiver." *Id.* (emphasis added). However, we specified that this holding

only applied to *pre-trial* substantive amendments. *Id.* With respect to amendments made after the commencement of trial, we find the reasoning in *Fajardo* and *Fuller* more persuasive. When the General Assembly amended I.C. § 35–34–1–5, it authorized a specific time frame in which the State could substantively amend a charging Information. As we concluded in *Fuller*, overlooking this pre-requisite by upholding an untimely amendment where a defendant has failed to move for a continuance would ignore the intent of the statute.

In light of the above, we reverse the trial court's decision and vacate Gibbs' conviction for arson as a Class B felony, I.C. § 35–43–1–1. We remand this case to the trial court for a new trial.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not err in declaring Gibbs competent to stand trial; and (2) the trial court did err in allowing the State to amend Gibbs' charging Information after reading the charges to the jury during *voir dire.* We reverse the trial court's decision and vacate Gibbs' conviction for arson as a Class B felony.

Reversed and remanded for a new trial.

DARDEN, J., and BARNES, J., concur.