**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 26 2012, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIAM S. FRANKEL, IV**
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KEVIN A. NASSER, )
                                          )
    Appellant-Defendant, )
                                          )
              vs. ) No. 84A05-1202-CR-82
                                          )
STATE OF INDIANA, )
                                          )
    Appellee-Plaintiff. )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1101-FC-249

**September 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Kevin A. Nasser appeals his convictions, following a jury trial, for class D felony battery by body waste, class A misdemeanor battery, class B misdemeanor battery, class B misdemeanor disorderly conduct, and class B misdemeanor public intoxication. At trial, Nasser voluntarily slept during portions of voir dire and witness testimony. The sole restated issue raised on appeal is whether the trial court abused its discretion when it failed to hold a hearing to determine if Nasser was competent to stand trial, thus denying him due process. Finding no abuse of discretion, we affirm Nasser's convictions.

## Facts and Procedural History

The facts most favorable to the verdicts indicate that on the morning of January 15, 2011, Nasser consumed quite a few, but less than ten, vodka drinks. At some point, he decided to walk to his girlfriend's daughter's house, which was two houses away from his. As Nasser proceeded through the alley behind the houses, two of his neighbors, fourteen-year-old T.R. and eleven-year-old Q.R., were outside taking out the trash. Christina, the boys' mother, watched through her back door. Nasser approached the boys in their yard. When Q.R., who is biracial, told Nasser that he was not supposed to be in their yard, Nasser replied, "F**k you, n*****r." Tr. at 242, 251. T.R. then ran toward Nasser. Nasser punched T.R. twice in the face with a closed fist. Christina ran outside and watched as Nasser and T.R. scuffled, arguing and fighting as they fell onto a parked car. Christina pulled T.R. away and shoved Nasser to the ground. Nasser managed to get up and angrily faced Christina with clenched fists until he suddenly noticed that Christina's boyfriend, John,

2

had come outside and was standing there. Nasser then turned and walked down the alley to his girlfriend's daughter's house. Christina and John called the police.

Shortly thereafter, Terre Haute Police Officers Jeremy Sparks and Chris Mundy arrived on the scene. As John and Christina began to tell the officers about the incident, Nasser returned to the alley. Officer Mundy spoke with John and Christina as Officer Sparks stood with Nasser. Officer Sparks immediately observed that Nasser was intoxicated. He smelled strongly of alcohol, had bloodshot watery eyes, was unsteady on his feet, and he had slurred speech. As Nasser stood with Officer Sparks, he yelled racial slurs and profanity at John and Christina. Officer Sparks made several attempts to get Nasser to calm and quiet down, to no avail. Nasser continued to yell terribly offensive and profane things at John and Christina.

John became very upset with the ranting and threatened to "kick" Nasser's "ass." *Id.* at 286, 295. Nasser was belligerent and would not stop yelling profanity and racial slurs. Officer Sparks informed Nasser that he was placing him under arrest for disorderly conduct. Officer Sparks handcuffed one hand before Nasser began to pull away. Officer Sparks pushed Nasser against a parked car, finished handcuffing him, and placed him in the back of the police vehicle. All the while, Nasser continued to yell profanity.

En route to jail, Nasser began to focus his anger toward Officer Sparks. Nasser yelled profanity at Officer Sparks and threatened to hurt him. When Officer Sparks turned to speak to Nasser to attempt to calm him, Nasser spit on the right side of Officer Sparks's face and the back of his head. Officer Sparks stopped his vehicle on the side of the road and requested

a paddy wagon to transport Nasser. Nasser then began kicking the back passenger door and window of the police vehicle with his feet. Officer Sparks opened the door and ordered Nasser to exit the vehicle. Nasser kicked Officer Sparks in the leg and groin several times. Officer Sparks put his taser in "drive stun" mode and tased Nasser. *Id*. at 348.[1] Officer Sparks was then able to pull Nasser from the police vehicle. Nasser scraped his face on the asphalt when pulled from the vehicle. He was then loaded in a paddy wagon and transported to Terre Haute Regional Hospital for jail clearance.

Nasser's belligerent behavior continued upon arrival at the hospital. Police officers and hospital staff were forced to place Nasser in a secure room that is reserved for "combative" patients. *Id*. at 358-59. Registered nurse Olivia Roloff was in the room as Nasser continued to yell, cuss, and use racial slurs. When Roloff attempted to take Nasser's blood pressure, he raised both knees in the air and struck Roloff, causing her to fall backward.

The State charged Nasser with class D felony battery by body waste, class A misdemeanor battery, two counts of class B misdemeanor battery, class B misdemeanor disorderly conduct, and class B misdemeanor public intoxication. The State also alleged that Nasser was a habitual offender. A jury trial was held on December 13 and 14, 2011. Nasser testified on his own behalf. During trial, due to the unavailability of one of the State's witnesses, T.R., the State moved to dismiss one of the class B misdemeanor battery charges,

---

[1] Testimony indicates that "drive stun" mode for a taser has the effect of obtaining pain compliance from the subject as opposed to full muscle "lock-up" that occurs from full taser mode. Tr. at 348-49.

4

which motion was granted by the trial court. The jury found Nasser guilty on all remaining charges. Thereafter, Nasser pled guilty to the habitual offender charge. The trial court sentenced Nasser to an aggregate sentence of five and one-half years. This appeal ensued.

**Discussion and Decision**

The sole evidence relied upon by Nasser in support of this appeal is a statement made by the trial court during sentencing. Specifically, after considering the factors it would consider in aggravation and mitigation of Nasser's sentence, the court stated:

> But, I think I'd be retiscent [sic] if I didn't comment on the nature of, of the trial itself, because I don't think the record embodies clearly some of the facts. One (1), one (1) thing that was clear, was that Mr. Nasser slept through large portions of jury selection, and part of the testimony. Now whether that was because – no one's, there's been no medical evidence that he's narcoleptic, but it clearly was evident to the jury, whether he was under the influence of substances or just simply tired, I don't know. But it didn't make a good impression on the jury, nor on the Court, with the seriousness of what's going on here, that you come in and sleep. Everyone else was paying attention but you. And the record certainly wouldn't reflect that.

*Id*. at 556-57. Based on this statement by the court, Nasser contends that the trial court abused its discretion when it allowed the trial to proceed as he slept instead of halting the proceedings and holding a hearing to determine if he was competent to stand trial.

The conviction of an incompetent defendant is a denial of both federal due process and a state statutory right. *Gibbs v. State*, 952 N.E.2d 214, 219 (Ind. Ct. App. 2011), *trans. denied* (2012). A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. *Id*. Indiana Code Section 35-36-3-1(a) provides in relevant part:

> If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability.

Still, the right to a competency hearing is not absolute. *Gibbs*, 952 N.E.2d at 219. A court is required to hold a hearing to determine the defendant's competency to stand trial only when confronted with evidence creating a reasonable doubt about the defendant's competency. *Haviland v. State*, 677 N.E.2d 509, 516 (Ind. 1997). "If a judge has reasonable grounds to believe the defendant is competent, that is, he believes the defendant is able to understand the proceedings and assist in his defense, no further hearing is necessary." *Gibson v. State*, 490 N.E.2d 297, 299 (Ind. 1986). Whether reasonable grounds exist to order an evaluation of competency is a decision assigned to the sound discretion of the trial court, reviewable only for an abuse of discretion. *Brown v. State*, 516 N.E.2d 29, 30 (Ind. 1987). An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Gibbs*, 952 N.E.2d at 219.

There is nothing in the record before us to indicate that the trial court had reasonable grounds to order a competency evaluation of Nasser. Despite the trial court's comment during sentencing regarding Nasser's act of sleeping during portions of voir dire and during "some" testimony, Nasser was presumably awake during most of the witness testimony and was able to take the stand during trial and to maintain his defense that he was a victim rather than an aggressor during his encounter with Q.R. and T.R. Significantly, neither Nasser nor

his attorney ever asserted during trial that Nasser's act of sleeping during some of the testimony rendered him incompetent to stand trial. Indeed, neither Nasser nor his attorney asserted during sentencing, in response to the trial court's comments regarding his sleeping, that Nasser's act of sleeping was anything but a voluntary act or that it impeded Nasser's ability to understand the proceedings and assist in the preparation of a defense. The trial judge had the opportunity to observe Nasser's conduct during the course of the trial and was in the best position to determine whether reasonable grounds existed to question Nasser's competency. Such grounds did not exist.

We cannot say that the trial court's decision to proceed with trial rather than order a competency evaluation was against the logic and effect of the facts and circumstances before the court. Nasser has not shown that the trial court abused its discretion. His convictions are affirmed.

Affirmed.

RILEY, J., and BAILEY, J., concur.