Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the
case.



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Public Defender Department
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH ALEXANDER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1210-CR-492 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C04-1109-FA-58

**June 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Kenneth Alexander appeals his conviction and sentence for burglary as a class A felony and his adjudication as an habitual offender. Alexander raises two issues which we revise and restate as:

I. Whether the court erred in allowing the State to amend its habitual offender information; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

FACTS AND PROCEDURAL HISTORY

On September 12, 2011, Sarah Beaver arrived at her home for lunch and observed a truck backed into her driveway. She also observed that the front door had been opened and appeared broken, and when she looked inside she saw a tote which usually held her son's toys but which instead held electronics, including a Sony Playstation and speakers. She then heard the blinds on her sliding door moving and saw a man later identified as Alexander enter her home without her permission. When Alexander saw Beaver, he shoved her, causing Beaver to fall against a pillar on her front porch against her back and then to the ground, which caused her pain including bruising to her back and a scratch on her wrist. Beaver called 911, and Alexander drove away, driving over the lawns of Beaver and her neighbor in the process because Beaver's vehicle was parked behind Alexander's truck.

Jeffersonville Police Officer Tom Mitchell heard a radio dispatch of a burglary in progress, including the description of the perpetrator and the truck, as well as the direction in which he was traveling. About five minutes later, and a few miles from

2

Beaver's residence, Officer Mitchell observed Alexander driving a truck matching the description and initiated a traffic stop. Alexander had a purple camcorder in his pocket which belonged to Beaver and contained a picture of her son. In searching the truck, police discovered a cell phone belonging to Beaver as well. When interviewed by police, Alexander gave inconsistent statements but ultimately admitted that he had been inside Beaver's home.

On September 19, 2011, the State charged Alexander with burglary as a class A felony, noting that the commission of the burglary resulted in bodily injury to Beaver including "bruising on her back and/or a scratch on her wrist," as well as with being an habitual offender. Appellant's Appendix at 10. Specifically, the habitual offender charging information listed twenty-six previous burglary convictions, noting that twenty-five of the convictions were committed "[o]n or about November 12, 1998 . . . in Jefferson County, Kentucky, Cause #98-CR-2831," that he was convicted and sentenced for these offenses on January 18, 2000, that the twenty-sixth burglary occurred in Kentucky "[o]n or about March 9, 2003," and that the conviction and sentence for this offense was entered on May 23, 2003. Id. at 11-13.

On July 5, 2012, Alexander filed a motion for bifurcated trial, among other motions, and on July 9, 2012, the court held a hearing and granted Alexander's motion. The court commenced a jury trial on July 10, 2012. On July 11, 2012, prior to the jury returning with its verdict, the State discussed with the court that the dates of the commission of the crimes listed on the habitual offender charging information were incorrect and stated that it wished to amend the charging information. Alexander moved

3

to dismiss, stating that the State "can't go back and amend the information when, at this phase when the trial is already begun." Transcript at 247. The State responded that it "obviously can amend charges as far as to conform with the evidence produced, as in any given stage," and Alexander replied that such a request was untimely and noted that, although "it's been documented at final pre-trial conferences that that's been incorrect, twice," and that the State failed to file a motion to amend prior to the commencement of trial. Id. at 247-248. The court stated that if the jury finds Alexander guilty of the burglary, it would advise the jury of the habitual offender charge, and the parties could present arguments the following morning as to whether the State could amend the charging information. The court then invited the jury into the courtroom, and the jury found Alexander guilty of burglary as a class A felony.

The next morning, the State filed an amended charging information. The twenty-five burglary convictions under Cause #98-CR-2831 had various dates between September 26, 1997 and October 24, 1997, as the commission dates. Alexander objected, noting that "we're not talking about just amending one date" and that it was a "substantial change" because "we knew Mr. Alexander had not committed any offenses on November 12, 1998 because he was incarcerated at the time . . . ." Id. at 253. Alexander also objected to the amendment by noting that it was untimely and without proper notice. The State responded by noting that it may at any time amend a charging information to correct typographical errors or add more accurate or detailed information and that it was not changing any of the counts of the actual felony convictions. The State maintained that Alexander knew "whether or not he committed these burglaries on that day and

4

where he was at." Id. at 255. The court allowed the State to amend the habitual offender charging information.

During the habitual offender phase of trial, the State admitted into evidence, as State's Exhibits 34 and 35, certified copies of certain criminal convictions in Jefferson County, Kentucky, against Alexander, which included Alexander's birth date and social security number and which corresponded to the amended charging information. Following deliberations, the jury found that Alexander was an habitual offender. On October 1, 2012, the court held a sentencing hearing and sentenced Alexander to thirty years for burglary and enhanced the sentence by an additional thirty years for the habitual offender adjudication. Thus, Alexander was sentenced to a term of sixty years in the Department of Correction.

DISCUSSION

I.

The first issue is whether the court erred in allowing the State to amend its habitual offender information. Alexander argues that the amendment "was one of substance and did prejudice his substantial rights" because he "was prepared to establish he was incarcerated on November 12, 1998 and therefore was not the same individual who had committed the offenses," and that accordingly it was untimely because it was filed after trial had commenced. Appellant's Brief at 12-13. Alexander also argues that "the manner in which the State made the request to amend did not give [him] adequate notice and an opportunity to be heard." Id. at 13.

5

The State asserts that the errors were typographical in nature, were discussed prior to trial, and did not change the prior convictions being alleged, and accordingly the amendment was one of form. The State argues that "[a]ny confusion about the commission date of the first offenses did not cast any doubt on the valid ordering of the prior felonies, as the sentencing date for the first felonies remained January 18, 2000, and the commission date for the last felony remained in 2003." Appellee's Brief at 8-9. The State argues that Alexander alleges a "sort of 'gotcha' technicality" which "is not really a defense to the habitual allegation" and notes that he "has no valid defense or argument to suggest that he is not the Kenneth Lee Alexander who was convicted of twenty-five counts of burglary under Cause Number 98-CR-2831 or the subsequent burglary in 2003" and that "[t]he certified documents identify [Alexander] by date of birth and social security number." Id. at 10-11. The State also argues that for these reasons, Alexander's substantial rights were not prejudiced. Finally, the State contends that to the extent Alexander argues that he did not receive notice and an opportunity to be heard, he had notice of the error and the State's intent to correct the information before trial. Further the court, prior to deciding whether to allow the State to amend, adjourned for the day and instructed the parties to come back the next morning with arguments prepared, and the next morning the court indeed heard arguments from both parties.

Whether an indictment or information may be amended after the commencement of trial depends upon whether the amendment is one of form or substance. An amendment of substance is not permissible after trial has commenced. Ind. Code § 35-34-1-5(b). After the commencement of trial, the court may "permit an amendment to the

6

indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5(c). Accordingly:

> the first step in evaluating the permissibility of amending an indictment or information is to determine whether the amendment is addressed to a matter of substance or one of form or immaterial defect. . . . [A]n amendment is one of form, not substance, if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an amendment is one of substance only if it is essential to making a valid charge of the crime.

Fajardo v. State, 859 N.E.2d 1201, 1207 (Ind. 2007), superseded by statute on other grounds.

"Whether an amendment is a matter of substance or form is a question of law, which we review *de novo*." Gibbs v. State, 952 N.E.2d 214, 221 (Ind. Ct. App. 2011) (citing Fields v. State, 888 N.E.2d 304, 310 (Ind. Ct. App. 2008)), trans. denied. "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." Gomez v. State, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), trans. denied. "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." Hurst v. State, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008) (quoting Sides v. State, 693 N.E.2d 1310, 1313 (Ind. 1998), abrogated on other grounds by Fajardo, 859 N.E.2d at 1206-1207), trans. denied.

As the State noted both at trial and on appeal, the Indiana Supreme Court has previously addressed instances in which the State had sought to amend an habitual

offender charging information to correct certain dates. In <u>Brooke v. State</u>, the defendant argued that the State made substantive changes to his habitual offender charging information when it corrected the dates of two prior felony convictions, including changing one conviction date from October 13, 1985 to October 13, 1982 and another from August 6, 1985 to September 6, 1985, as well as another amendment to include names of two additional witnesses. 516 N.E.2d 9, 13 (Ind. 1987). Specifically, the defendant argued "that the changes in these dates are material and because he was not informed by the State as to what prior felonies would be the basis of the habitual offender charge, he was unable to prepare his defense." <u>Id.</u> The Court noted:

> In the State's response to defendant's motion for discovery the State brought forth a commitment dated October 13, 1982, in which appellant was sentenced for five years, with three years suspended for burglary, and a sentencing order dated September 6, 1985, in which appellant had been given two two-year sentences to run concurrently for two counts of theft. The habitual offender information charged that appellant was convicted of burglary, for which he received a five-year sentence with three years suspended, and two counts of theft, for which he received a two-year sentence. It is evident that the felonies brought forth in the State's discovery response were the same as those in the habitual offender charge.

<u>Id.</u> at 13-14. The Court held that "although the State could have acted with greater care in the preparation of these documents, the amendments did not preclude appellant from being aware of the crimes which the State used to establish his habitual offender status," and that accordingly his ability to prepare his defense was not impacted. <u>Id.</u> at 14.

The <u>Brooke</u> Court cited to an earlier case, <u>Hudson v. State</u>, 443 N.E.2d 834 (Ind. 1983). In that case, the trial court allowed the State to amend the habitual offender charging information during trial, over the defendant's objection. The information originally alleged that the defendant was convicted and sentenced on December 17, 1973

8

"and the State was permitted to amend it to conform with the proof, to allege that the defendant . . . was convicted on November 29, 1973 and sentenced on December 17, 1973 . . . ." 443 N.E.2d at 836 (internal quotations omitted). On appeal, the defendant argued that the amendment was one of substance and not form, noting that "it altered the defenses available to him," but the Court disagreed, noting that the exhibits demonstrated that he "had entered a guilty plea on November 29, 1973 and . . . that he was sentenced on December 17, 1973." Id. at 836-837. The Court held that the trial court did not err in allowing the amendment because it was insignificant and did not prejudice the defendant's substantial rights. Id. at 837.

Similarly, here we find that in amending the habitual offender charging information, Alexander's substantial rights were not prejudiced and that accordingly this amendment was one of form. Indeed, as noted in Fajardo, "an amendment is one of substance only if it is essential to making a valid charge of the crime." 859 N.E.2d at 1207. In order to prove that Alexander was an habitual offender, the State was required to prove that he had "accumulated two (2) prior unrelated felony *convictions*," Ind. Code § 35-50-2-8(a) (emphasis added), and here, prior to the amendment, the charging information alleged that he had been convicted and sentenced for twenty-five counts of burglary under Cause #98-CR-2831 on January 18, 2000, and that a subsequent conviction and sentence for burglary was entered on May 23, 2003. The certified copies of these convictions, which were entered into evidence, included Alexander's birth date and social security number. None of this information changed when the State amended

9

the charging information. Thus, we cannot say that Alexander has established that he lost a valid defense when the State was allowed to amend the charging information.

Finally, to the extent Alexander argues that he did not receive sufficient notice and an opportunity to be heard, we observe that the original habitual offender charging information, which was identical to the amended charging information save the dates of commission of the crimes, was filed on September 19, 2011, the same date he was charged with burglary. Following the State's request to amend the habitual offender charging information, the court decided that, if the jury were to find him guilty of the burglary, it would adjourn for the evening to allow the parties to research the issue and prepare arguments. The next morning the State filed the amended charging information and the court listened to arguments of the parties before allowing the State to so amend. Also, there is no evidence that Alexander was unaware of the fact in advance of trial that these were the convictions the State wished to use to prove the habitual offender allegation, and in fact when discussing the State's request to amend, Alexander specifically acknowledged that the inaccuracies in the habitual offender charging information regarding the dates of the commission of the offenses vis a vis the evidence had been documented at two separate pre-trial conferences. We cannot say that Alexander was deprived of sufficient notice or an opportunity to be heard.

Although the State certainly could have acted with greater care in the preparation of its habitual offender charging information, Alexander was not deprived of a valid defense by the State's amendment, and therefore we conclude that the court did not err in allowing the State to amend the habitual offender charging information.

10

II.

The next issue is whether Alexander's sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Alexander argues that the prosecutor's comment at sentencing that "[a]t fourteen years of being a prosecutor I never prosecuted anybody that had twenty-seven burglary convictions" was not given its "proper context" because his criminal history reveals "that a twenty-seven year old Alexander committed numerous burglaries over a time period of less than thirty days," that he "explained that this conduct resulted 'from drug addiction, living on the streets, bad choices,'" and that such "legal problems reflect a very small period of his life and do not adequately define him." Appellant's Brief at 20-21. Alexander argues that he has a close relationship with his mother, that he has a child with his fiancée, that he graduated high school and obtained an associate's degree in design drafting, and that he had started a landscaping business. Alexander also asserts that the injury to Beaver in this instance "was minimal" and, had he been charged for merely injuring her it would have been charged as battery as a class A misdemeanor which carries a maximum prison term of not more than one year. Id. at 22. He notes that

11

despite this, here his sentence was enhanced from a class B felony to a class A felony which "effectively add[ed] ten years to the advisory sentence . . . ." Id. at 23.[1]

The State notes in its brief that Alexander's sentence was subject to the "mandatory minimum non-suspendible" provision as provided by Ind. Code § 35-50-2-2(b)(1) "since [he] was convicted of a class A or B felony and has a prior unrelated felony conviction," and "the thirty-year enhancement . . . was mandated by statute and cannot be reduced by the trial court or by this Court." Appellee's Brief at 15. The State contends that the record reveals "it was entirely unnecessary" for Alexander to have assaulted Beaver because "she did not block his only method of egress." Id. at 16. The State further argues that the court accounted for the fact that Beaver's injuries were relatively minor when it sentenced him to the advisory term, and to the extent Alexander suggests that the enhancement is disproportionate compared with the battery and robbery statutes, such are policy decisions made by the General Assembly and have no place in Ind. Appellate Rule 7(B) analysis. Finally, the State asserts that Alexander "tries to downplay the significance of [his] criminal record because so many of the offenses were committed in a short span of time," but in fact his criminal history reveals "that every time [he] is released back into the community, he quickly returns to a life of crime." Id. at 18.

---

[1] We observe that some of Alexander's arguments may be more accurately classified as raising the issue of whether the trial court abused its discretion in sentencing him. In his brief, Alexander discusses topics including the April 2005 revisions to Indiana's sentencing scheme, the adequacy of sentencing statements, and aggravators and mitigators. He makes clear, however, that his intent in making such assertions is for this court to take them into consideration during our review pursuant to Ind. Appellate Rule 7(B), specifically arguing that "[a]lthough his arguments may not rise to a level establishing an abuse of sentencing discretion they are relevant when later exploring the appropriateness of the sentence." Appellant's Brief at 16; see also Appellant's Reply Brief at 7 ("Alexander has not asked this Court to determine whether the trial court abused its sentencing discretion.").

Our review of the nature of the offense reveals that Beaver arrived at her home and observed a truck in her driveway and that her front door appeared to be opened and broken. Peering inside, she observed that a bag had been filled with electronic equipment. Beaver heard movement of her sliding door blinds and saw Alexander entering her home without her permission. Upon noticing Beaver, Alexander shoved her, causing Beaver to fall against a pillar on her front porch against her back and then to the ground, which caused her pain including bruising to her back and a scratch on her wrist. Alexander then drove away, driving over the lawns of Beaver and a neighbor because his truck had been blocked in by Beaver's vehicle. Soon after, Alexander was stopped by Officer Mitchell, and a search of his person and vehicle revealed a camcorder and cell phone which belonged to Beaver.

Our review of the character of the offender reveals that Alexander was forty-three years old at the time of sentencing and enjoyed multiple family bonds including that he was a father, was engaged, and was close with his mother. Alexander graduated from high school and had attended Jefferson Community College and Kentucky Polytechnic Institute, had received an associate's degree in design and drafting, and had started his own business. As noted above, in November 1999 Alexander pled guilty to twenty-five counts of burglary which took place in Kentucky between September 26, 1997 and October 24, 1997 as well as a count of carrying a concealed weapon. On January 18, 2000, Alexander received a sentence of ten years. Then, in 2003 Alexander again pled

13

guilty to two counts of burglary in which he received an aggregate sentence of seven years.[2]

After due consideration, we conclude that Alexander has not sustained his burden of establishing that his sentence of sixty years, including the advisory term of thirty years for burglary as a class A felony and thirty additional years for being adjudicated as an habitual offender, is inappropriate in light of the nature of the offense and his character.

For the foregoing reasons, we affirm Alexander's conviction and sentence for burglary as a class A felony and his adjudication as an habitual offender.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

---

[2] Alexander's Presentence Investigation Report ("PSI") also notes that he was arrested on September 4, 1998 for possession of cocaine or narcotic drug as a class C felony. The PSI does not reveal whether he was found guilty of this offense, however.