**Brian E. MAST, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 02A05–0811–PC–644.**

Court of Appeals of Indiana.

Oct. 13, 2009.

Cynthia Carter, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Brian E. Mast (Mast), appeals the post-conviction court's denial of his Petition for Post–Conviction Relief.

We reverse and remand.

### ISSUE

Mast raises three issues on appeal, one of which we find dispositive and which we restate as: Whether Mast received ineffective assistance of trial counsel.

### FACTS AND PROCEDURAL HISTORY

On January 26, 1989, the State charged Mast with Count I, rape, as a Class A felony, Ind.Code § 35–42–4–4; Count II, criminal deviate conduct, as a Class A felony, I.C. § 35–42–4–2(1); Count III, burglary, as a Class A felony, I.C. § 35–43–2–1; and Count IV, battery, as a Class C felony, I.C. § 35–42–2–1. On June 1, 1989, Mast's initial trial counsel filed a Notice of Defense of Mental Disease or Defect and a Motion to Suppress Statements. A hearing on those two motions was set for later that month. On June 27,

1989, pursuant to Indiana Code section 35–36–3–1, the trial court appointed Doctors John Rathbun (Dr. Rathbun) and Herbert Trier (Dr. Trier) to examine and evaluate Mast as to his competency to stand trial and to his sanity at the time of the alleged offenses. On July 25, 1989, Dr. Rathbun sent an evaluation to the trial court, which was filed on August 3, 1989. Dr. Rathbun elaborated in his letter that when he interviewed Mast, Mast was brought to the examination shackled in a padded one-piece garment. Dr. Rathbun concluded that while Mast did not "show depressed affect, express delusional thinking or appear to be hallucinating," due to muscular rigidity Mast exhibited during the interview, Dr. Rathbun was nevertheless unable to form a definite opinion regarding Mast's competency to stand trial. (Appellant's App. Vol. II, p. 97). He also stated that repeated interviews would be necessary to establish his mental condition and suggested that Mast be incarcerated in a maximum security forensic psychiatry unit to be evaluated by physicians 24 hours a day.

On July 31, 1989, Mast planned to enter a plea agreement with the State. However, during the hearing, Mast claimed not to remember the facts surrounding the event and withdrew the agreement.[1] However, four days later on August 3, 1989, Mast, while represented by a substitute counsel,[2]

---

1. The following is the conversation from the July 31, 1989 guilty plea hearing:

   [TRIAL COURT]: What is it that makes you guilty of that [rape]?
   [MAST]: Rape. That's all
   [TRIAL COURT]: What did you do?
   [MAST]: I raped her.
   [TRIAL COURT]: Okay. Give me a little more detail?
   [MAST]: That's all.

   . . .

   [TRIAL COURT]: Okay. And how did you go about this rape?
   [MAST]: I don't remember, Your Honor. I don't

[TRIAL COURT]: Did you use force?
[MAST]: Withdraw, I withdraw it. I'm sorry. I can't. I don't remember anything after I hit her. That's all, that's all I remember. . . .

   . . .

[MAST]: I withdraw my plea bargain. Take me downstairs. I want a jury trial. (Petitioner's Ex, D, p. 6).

2. Mast's initial trial counsel was not with Mast when he entered into the plea agreement. Instead, another attorney with the Allen County Public Defender's office appeared

pled guilty pursuant to the terms of the previous plea agreement. It is not clear from the record whether Dr. Rathbun's report, which was mailed July 25, 1989, but filed by the clerk on August 3, 1989, was before the trial court during the plea agreement.

On August 7, 1989, Dr. Trier sent the trial court an evaluation, stating he had examined Mast and concluded:

> Although this man does not present a classical case of psychosis his thinking can at time[s] be so chaotic although his behavior apparently is under control. His behavior problems have existed for so long that I doubt that he has the ability to meaningfully help in his defense or understand thoroughly the nature of the charges against him.

(Appellant's App. Vol. II, p. 100). Dr. Trier also commented that Mast had a bandage on his right arm due to the fact that he "bit out the flesh" on his arm and the taping was necessary to keep him from doing it again. (Appellant's App. Vol. II, p. 100). Mast also had "residual scarring" likely from "prior suicidal attempts." (Appellant's App. Vol. II, p. 100). Dr. Trier's evaluation was addressed to the wrong trial judge and did not arrive before the plea hearing. Additionally, the evaluation was dated August 7, 1989, and would not have arrived in time for the guilty plea hearing which took place on August 3, 1989.

On August 28, 1989, the trial court sentenced Mast pursuant to the plea agreement, which provided that Mast would be sentenced to concurrent terms of thirty years on Counts I and II, and five years consecutively on Count IV, resulting in an aggregate term of thirty years imprisonment.

with Mast and entered a written appearance

On November 27, 1990, Mast filed a *pro se* Petition for Post–Conviction Relief. On August 4, 1994, Mast, with counsel, moved to withdraw his petition without prejudice. On October 15, 2001, Mast filed a second *pro se* petition which was amended by counsel on November 27, 2006. On April 23, 2008, a post-conviction hearing was held. During the post-conviction hearing, the post-conviction court asked whether Dr. Rathbun's report had been received by the trial court:

> [PCR COURT]: I want to just—And I know this was a long time ago, [counsel], but going back to the July 31st hearing, Mr. Mast does not ask you about the mental health reports coming back and you say at that time something has come back or yes to the question.
>
> [TRIAL COUNSEL]: Okay. He says, "I was—I—I'll sign it. Did the reports come back from my mental health yet?" and I said "Yes."
>
> [PCR COURT]: So you must have had at least one of the reports back by then or you would not have answered in the affirmative, would you?
>
> [TRIAL COUNSEL]: No. I must have had something back.

(Tr. pp. 56–57). However, later on in the transcript of the post-conviction hearing, it was noted that the report was not actually file stamped by the trial court until August 3, 1989. When asked by the post conviction court whether the initial trial counsel received any discovery after April 11, 1989, he stated:

> No. I don't—I don't know. I do know that it—I would have received anything [the State] had; and basically, this document has a file mark of August 3rd on it
> . . .

(Tr. p. 61). On September 18, 2008, the post-conviction court issued Findings of

on August 8, 1989.

Fact and Conclusions of Law denying Mast's Petition for Post–Conviction Relief.

Mast now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1 § 5. To succeed on an appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Strowmatt v. State,* 779 N.E.2d 971, 975 (Ind.Ct.App.2002).

### II. Effective Assistance of Counsel

Mast argues that the post-conviction court should be reversed because he received ineffective assistance of counsel. Specifically, he contends that his trial counsel rendered ineffective assistance because he was advised to enter into a guilty plea and guided through a sentencing hearing without awaiting the results of the competency evaluations.

■ To establish a violation of the right to effective counsel as guaranteed by the Sixth Amendment, petitioners typically must establish both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), *reh'g denied.* The defendant must prove (1) his or her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Johnson v. State,* 832 N.E.2d 985, 996 (Ind. Ct.App.2005), *reh'g denied, trans. denied* (*citing Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Essentially, the defendant must show that counsel was deficient in his or her performance and the deficiency resulted in prejudice. *Johnson,* 832 N.E.2d at 1006. Because all criminal defense attorneys will not agree on the most effective way to represent a client, "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Bieghler v. State,* 690 N.E.2d 188, 199 (Ind. 1997), *reh'g denied, cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Thus, there is a strong presumption that counsel rendered adequate assistance and used reasonable professional judgment. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001). If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

Under the first *Strickland* prong, Mast argues that his trial counsel should have awaited the results of the psychiatrists' evaluations and requested a competency hearing pursuant to I.C. § 35–36–3–1 [3] to

---

3. I.C § 35–36–3–1 provides as follows:
   (a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court

shall appoint two (2) competent, disinterested psychiatrists, who shall examine the defendant and testify at the hearing as to whether he can understand the proceedings and assist in the preparation of his defense.
(b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of his defense may be introduced. If the court finds that the defendant

establish his mental competency before guiding him through the guilty plea. In response, the State claims that Mast's trial counsel was in the best position to determine whether Mast was competent to proceed with the guilty plea.

▮ A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. I.C. § 35–36–3–1. The right to a competency hearing pursuant to Indiana Code § 35–36–3–1 is not absolute. *Campbell v. State*, 732 N.E.2d 197, 202 (Ind.Ct.App.2000). Such a hearing is required only when a trial judge is confronted with evidence creating a reasonable or bona fide doubt as to a defendant's competency, which is defined as whether a defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him. *Id.* The presence of indicators sufficient to require the court to conduct a hearing under I.C. § 35–36–3–1 must be determined upon the facts of each case. *Hadley v. State*, 496 N.E.2d 67, 71 (Ind.1986). Whether reasonable grounds exist to order evaluation of competency is a decision that will be reversed only if we find that the trial court abused its discretion. *Id.* A trial judge's observations of a defendant in court are an adequate basis for determining whether a competency hearing is necessary; such a determination will not be lightly disturbed. *Id.*

In *Matheney v. State*, 688 N.E.2d 883, 899 (Ind.1997), the defendant filed a notice of insanity defense and requested a psychological evaluation to determine his competency to stand trial. Both psychiatrists found the defendant to be competent to

stand trial. *Id.* As a result, the defendant's trial counsel did not request a competency hearing. *Id.* Our supreme court held that given the psychiatrists' determination before trial, the defendant's trial counsel was not ineffective for failing to follow up their request for a competency hearing. *Id.*

▮ In this case, Mast's trial counsel put the trial court on notice that Mast's mental health might be at issue when he filed a Notice of Mental Disease or Defect. Specifically, during the post-conviction hearing, which was held *twenty years* after Mast pled guilty making it difficult for parties to recall events, Mast's trial counsel testified that although he would not permit a client to plead guilty if he did not "feel that it was in their best interests and that they were indeed guilty," he also could not "testify today about what Brian Mast's level of competency was at the time from independent recollection." (Tr. pp. 40, 41). However, he later testified at the post-conviction hearing that he must have had some question about Mast's mental capacity because he filed a Notice of Mental Disease or Defect. He testified "... [I] must have had a question. I don't routinely file those. I must have had a question about his competency." (Tr. p. 54).

The trial court responded to Mast's trial counsel's request by appointing Dr. Rathbun and Dr. Trier to evaluate Mast's mental capacity. Dr. Rathbun's evaluation, which may have never even reached the trial court stated:

> Mr. Mast was brought to the examination shackled in a padded one-piece garment. He has numerous old self-inflict-

has the ability to understand the proceedings and assist in the preparation of his defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it shall delay or continue the trial

and order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution.

ed slash marks on the inside of his left arm and a four inch by one and a half inch tear through the dermis on his right arm which he stated was self-inflicted by biting.... He then manifests the appearance of an oculogyric crisis, which is a fairly severe condition of muscular rigidity that occurs in people who have been given neuroleptic medication. (Appellant's App. Vol. I, p. 96). While the report also indicated that Mast had a long history of "self-directed violence, which appears manipulatively directed to avoiding the consequences of his bad behavior," the report concluded that a definite opinion regarding the individual's competency to stand trial or his sanity at the time of the incident could not be formed. (Appellant's App Vol. I, p. 97). Rather, Dr. Rathbun determined that more tests were needed to establish Mast's mental condition.

Dr. Trier's report, which was sent to the wrong trial judge *six days after the guilty plea agreement,* stated that "[t]he facts concerning the charges that he faces he recalls in a somewhat distorted manner and he may or may not be able to interpret these facts accurately." (Appellant's App. Vol. II, p. 100). Ultimately, Dr. Trier's report concluded that Mast's "behavior problems have existed for so long that I doubt that he has the ability to meaningfully help in his defense or understand the nature of his charges." (Appellant's App. Vol. II, p. 100).

Unlike *Matheney,* where the results of the psychiatrists' evaluations concluded that the defendant was competent to stand trial and thus a competency hearing was unnecessary, in this case, one report stated that Mast was not competent to stand trial and the other report could not make a determination one way or another. Ultimately, it was the responsibility of the trial counsel to ensure that the psychiatrists' reports were given to the court and a competency hearing was requested. Mast's trial counsel testified at the post-conviction hearing that he hesitated about Mast's competency but nevertheless, proceeded with a guilty plea without awaiting the results of the psychiatrists.

■ Under the second prong, Mast contends that if the case had proceeded to a competency hearing, the court would have had the psychiatrists' reports and would have been aware of the inconclusive nature of Dr. Rathbun's report and Dr. Trier's determination that Mast was likely unable to understand the nature of the charges against him. But for Mast's counsel's error, the result of the proceeding might have led to Mast's commitment to a mental institution with a re-evaluation instead of a guilty plea.

Based on the facts before us, we find that Mast's trial counsel fell below objective standard of reasonableness by not waiting for the results of the evaluations when one report suggested more evaluations were needed and the other report questioned Mast's ability to understand the proceedings. Additionally, there is a reasonable probability that the outcome of the case would have been different had the trial court been aware of the psychiatrists' reports.

## CONCLUSION

Based on the foregoing, we conclude that Mast's counsel rendered ineffective assistance by allowing his client to enter into a guilty plea without awaiting the results of his mental evaluation.

Reversed and remanded.

BAKER, C.J., concurs with separate opinion.

FRIEDLANDER, J., dissents with separate opinion.

BAKER, Chief Judge, concurring.

I fully concur with the majority opinion. I write separately to express my surprise that the State did not raise the affirmative defense of laches below and, of course, also fails to raise it on appeal. The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of a person who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. *Sweeney v. State,* 886 N.E.2d 1, 6 (Ind.Ct.App.2008), *trans. denied.* For laches to apply, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State is prejudiced by the delay. *Id.* In post-conviction proceedings, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful reprosecution. *Id.*

Here, the underlying crime occurred and Mast pleaded guilty in 1989. Mast filed a pro se petition for post-conviction relief in 1990 and withdrew it in 1994. He filed a second pro se petition for post-conviction relief in 2001. This petition was later amended by counsel in 2006. In 2008—nearly *twenty years* after the crime occurred—a hearing was held on Mast's petition. I believe that if the State had raised this argument, it would have prevailed. Inasmuch as it declined to do so, however, I fully concur with the majority.

FRIEDLANDER, Judge, dissenting.

I believe the post-conviction court correctly denied Mast's petition for postconviction relief and therefore respectfully dissent.

The Majority concludes that Mast received ineffective assistance of counsel because counsel advised Mast to plead guilty without waiting for the results of two competency evaluations. In order to prevail on his claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient and that he was prejudiced thereby. *French v. State,* 778 N.E.2d 816 (Ind.2002) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Taylor v. State,* 840 N.E.2d 324 (Ind.2006) (the failure to satisfy either component will cause an ineffective assistance of counsel claim to fail). This is the so-called *Strickland* test. Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State,* 778 N.E.2d 816. To establish the requisite prejudice, a petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State,* 765 N.E.2d 578, 585 (Ind.2002). The two elements of Strickland are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Landis v. State,* 749 N.E.2d 1130 (Ind.2001).

In this case, the Majority concludes not only that trial counsel's failure to wait for the competency reports fell below an objective standard of reasonableness, but also that Mast was prejudiced thereby. The prejudice cited in support of this conclusion was that "the result of the proceeding might have led to Mast's commitment to a mental institution with a re-evaluation instead of a guilty plea." *Op.* at 857. That is, waiting for the reports "might" have led to commitment and re-evaluation *if* Mast had been adjudged incompetent. In my view, this prejudice is too speculative in nature to demonstrate the requisite likelihood of success.

The standard of competence in this case is whether Mast " '[had] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -and ... [had] a rational as well as factual understanding of the proceedings against him.' " *Corcoran v. State,* 820 N.E.2d 655, 659 (Ind.2005) (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). The determination of competency is a fact-sensitive evaluation of a defendant's capabilities, and the trial court is best situated to perform this evaluation. *See Edwards v. State,* 902 N.E.2d 821 (Ind.2009). My review of the record, such as it is, reveals that Mast understood the nature of the proceedings against him and was able to, and did, consult with his lawyer concerning his case with a reasonable degree of understanding.

Mast indicated at his initial hearing that he understood the charges against him and the penalties he might incur if found guilty. At the guilty plea hearing, Mast's answers to the questions asked by the trial court were both responsive and lucid. There is nothing in the record of the proceedings at which Mast was present before the trial court indicating that Mast did not then possess a reasonable degree of rational understanding about what was happening to him. He seemed to be oriented in time and place, fully cognizant of what was happening, and his interactions with the court were appropriate and lucid. I can discern nothing that would have *compelled* the trial court to halt the proceedings based upon Mast's lack of competence.

Likewise, letters written by Mast to his counsel and the prosecutor during that time reflect that he clearly understood what was happening, and even reflected appropriate input with respect to matters of trial strategy. For his part, defense counsel admitted at the post-conviction

hearing that his memory of the events in question had faded and that he could not testify from present recollection "about what Brian Mast's level of competence was at that time[.]" *Transcript* at 41. He went on to state, however, that he would not have permitted Mast to plead guilty if he (counsel) believed Mast to be incompetent.

Finally, I note that the two psychiatric evaluations that ultimately were submitted did not conclusively establish Mast's incompetence. Dr. Trier reported that Mast "was oriented as to time, coherent and answered the questions in a cooperative manner. He was able to give an account of his past behavior.... [I]t seemed that he probably could have recalled the circumstances [of his offenses] if he was so inclined." *Appellant's Appendix* at 100. Dr. Trier went on to state that Mast did not present a classical case of psychosis and that his "behavior apparently is under control." *Id.* In light of these observations, his conclusion as to Mast's competence was decidedly equivocal, i.e., "I *doubt* that he has the ability to meaningfully help in his defense or understand thoroughly the nature of the charges against him." *Id.* (emphasis supplied). The other expert, Dr. Rathbun, expressly did not give an opinion regarding Mast's competence to stand trial, although he did note, "[d]uring the very brief interactions that we had, [Mast] did not show depressed affect. He did not express delusional thinking, and he did not appear to be hallucinating." *Id.* at 97.

Based upon the foregoing, I cannot agree that, had they waited for the experts' reports before proceeding with the guilty plea, the probability that Mast would have been adjudged incompetent to stand trial was high enough to meet the standard for establishing a claim ineffective assistance of counsel. That being the

case, Mast would have been in precisely the same situation that led him to accept the plea deal offered by the State. In other words, in my opinion, Mast has failed to make the requisite showing of prejudice. I would affirm the denial of Mast's petition for post-conviction relief.