**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**C. ROBERT RITTMAN**
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY WILDER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1311-CR-978 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Mark E. Spitzer, Judge
Cause No. 27C01-1211-FC-252

**September 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Gary Wilder appeals his convictions,[1] following a jury trial, for criminal confinement[2] as a Class C felony, criminal recklessness[3] as a Class A misdemeanor, and criminal mischief[4] as a Class A misdemeanor. On appeal, Wilder raises only one issue, whether the trial court erred by failing to conduct a hearing or make a finding regarding Wilder's competency to stand trial.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 10, 2012, T.S. and E.J., fellow fifth-graders, walked toward a park in Marion, Indiana. As the girls approached the intersection of First Street and the State Road 9 bypass, a car approached them that was operated by a man, later identified as Wilder. Wilder pulled up next to the two girls, opened his door, and started to get out. E.J., who did not feel safe, ran into the middle of the bypass.

James Devine, who was driving by at the time, almost hit E.J. as he watched Wilder grab T.S. from behind, pick her up, and carry her about five steps toward his vehicle. Devine turned his vehicle around and yelled at Wilder through his window. Wilder put T.S. down and fled in his vehicle. E.J. was pointing and yelling, so Devine followed Wilder. A high speed chase through a residential neighborhood ensued. On Fourth Street,

---

[1] We note that the General Assembly enacted a new version of the criminal statutes at issue, which became effective July 1, 2014. Because Wilder committed his crimes in November 2012, we apply the statutes in effect at the time he committed his crimes.

[2] *See* Ind. Code § 35-42-3-3.

[3] *See* Ind. Code § 35-42-2-2.

[4] *See* Ind. Code § 35-43-1-2.

2

a vehicle struck Wilder's car and caused it to crash into a large tree stump. The police arrived and arrested Wilder. By that time, T.S. and E.J. had already fled to E.J.'s home and reported the attempted abduction to E.J.'s father.

Witnesses testified that Wilder told several people at the scene that he thought T.S. was his niece. Officer Derrick Sessoms and Detective Benjamin Caudell, both of the Marion Police Department, and Wilder, all testified that Wilder thought T.S. was his friend's daughter.

On November 13, 2012, Wilder was charged with Class C felony confinement, Class A misdemeanor criminal recklessness, and Class A misdemeanor criminal mischief. Three days later, Wilder appeared at his initial hearing and informed the trial court that he did not suffer from any mental or emotional disability and that he understood the charges against him. The trial court appointed a public defender for Wilder.

On April 1, 2013, the date set for the jury trial, a hearing was held outside the presence of the venire panel. During that hearing, Wilder said that he was not satisfied with his attorney and then questioned the integrity of the trial judge and the legal system. While both attorneys stated that they were ready to proceed to trial that day, defense counsel said he had evidence that would support the giving of an insanity instruction. Following further discussion, the trial court granted defense counsel a ninety-day continuance so that Wilder could be evaluated for competency to stand trial and to determine his mental state at the time of the crimes charged.

On April 12, 2013, Wilder filed a Motion for Psychiatric Evaluation, which the trial court approved on April 23, 2013, appointing Frank H. Krause, Ed.D., HSPP, CSP and

3

Craig Buckles, M.D. Drs. Krause and Buckles filed their reports with the trial court on May 21, 2013 and May 23, 2013, respectively. In his report, Dr. Krause stated:

> Therefore, it is my professional opinion that after reviewing Court documents, including medical records, an interview, and the results of psychological testing, Gary Wilder is able to understand the charges and the Court proceedings in this matter, and to assist his attorney in the preparation of his defense. [5]

*Appellant's App.* at 72. Dr. Buckles noted that Wilder is intelligent, communicates well, and understands his charges, and concluded that Wilder "is competent to stand trial." [6] *Id.* at 68. On May 24, 2013, Wilder filed a belated notice of insanity defense, and the trial court allowed Wilder "to interpose the defense of insanity at trial." *Appellant's App.* at 5, 66.

A two-day jury trial was held on June 3-4, 2013. Fourteen witnesses testified for the State, Wilder and his niece testified for the defense, and Drs. Krause and Buckles testified as witnesses of the court regarding the insanity defense. The jury returned verdicts of guilty but mentally ill on each of the three counts. At sentencing, the trial court imposed an eight-year executed sentence for the Class C felony confinement conviction, a concurrent one-year executed sentence for the Class A criminal recklessness conviction,

---

[5] Regarding the applicability of the insanity defense, Dr. Krause stated, "It is also my professional opinion that Mr. Wilder suffers from a severely abnormal mental condition that grossly and demonstrably impairs his condition so that he could not appreciate the wrongfulness of the charged conduct at the time of the offense." *Appellant's App.* at 72

[6] Regarding the applicability of the insanity defense, Dr. Buckles also concluded that, "Although [Wilder] understands that it is wrong to confine, drive dangerously, or damage other's property, at the time it occurred his judgment was considerably impaired by his manic and delusional state." *Appellant's App.* at 68. Dr. Buckles concluded, Wilder, "therefore, was not able to understand the wrongfulness of his conduct at the time it occurred. I hope that Mr. Wilder can receive proper psychiatric treatment. He will probably require a long term mental health commitment to compel medication and ensure compliance." *Id.*

and a concurrent one-year executed sentence for the Class A misdemeanor criminal mischief conviction. Additionally, the trial court stated:

> I am going to make a recommendation to the Department of Correction[] that the Defendant receive appropriate treatment for his mental health and that that be taken into consideration in his placement at the Department of Correction[]. It's my hope that the Defendant will seek appropriate treatment because I think if he does seek appropriate treatment and that's his best opportunity to return to being a productive member of society and one that does not present risk to our community . . . .

*Tr*. at 355.

Wilder filed his motion to correct error on August 7, 2013, alleging that his trial counsel was ineffective for failing to secure attendance of various witnesses at trial who Wilder believed would have provided exculpatory evidence. Following a hearing, the trial court denied Wilder's motion on October 21, 2013. Wilder now appeals. Additional facts will be supplied where needed.

## DISCUSSION AND DECISION

Wilder contends that the trial court erred by failing to conduct a hearing or make a finding regarding his competency to stand trial. As the State correctly notes, defense counsel waived this issue by failing to object to the lack of a hearing or to the fact that the trial court did not make a formal competency determination. *See Archer v. State*, 996 N.E.2d 341, 351 (Ind. Ct. App. 2013) (citing *Stafford v. State,* 736 N.E.2d 326, 332 (Ind. Ct. App. 2000) (there, defendant did not make timely objection to jury instructions, and issue was waived for appellate review), *trans. denied*), *trans. denied.* Accordingly, Wilder must show that the error, if any, rises to the level of fundamental error. *Id*. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue.

*Cooper v. State,* 854 N.E.2d 831, 836 (Ind. 2006). "For an error to be fundamental, it must be a 'substantial, blatant violation of basic principles of due process that renders the trial unfair to the defendant.'" *Archer*, 996 N.E.2d at 351 (quoting *Stafford,* 736 N.E.2d at 332). As we explain below, while the fundamental error standard applies, here, the trial court committed no error, fundamental or otherwise.

Indiana Code section 35-36-3-1 provides:

(a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested:

(1) psychiatrists;
(2) psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology; or
(3) physicians;

who have expertise in determining competency.

Our court has said that "'the conviction of an incompetent defendant is a denial of federal due process and a denial of a state statutory right as well.'" *Minnick v. State*, 965 N.E.2d 124, 131 (Ind. Ct. App. 2012) (quoting *Gibbs. v. State*, 952 N.E.2d 214, 219 (Ind. Ct. App. 2011), *trans. denied*), *trans. denied*. "A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense." *Id.* (citing *Mast v. State,* 914 N.E.2d 851, 856 (Ind. Ct. App. 2009), *trans. denied*). Nevertheless, "the right to a competency hearing is not absolute." *Id.* (citing *Mast,* 914 N.E.2d at 856). "Instead, such a hearing is required only when a trial court is confronted with evidence creating a reasonable or *bona fide* doubt as to a defendant's competency."

6

*Id.* (citing *Mast,* 914 N.E.2d at 856) (emphasis in original). "The decision regarding whether there is a reasonable doubt is within the trial court's discretion and depends upon the specific facts and circumstances of each case." *Id.* "We will only reverse the trial court's decision if we find that the trial court has abused its discretion." *Id.* The trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Id.* As we explain below, under the facts before us, the trial court had no evidence creating a reasonable doubt as to Wilder's competency, i.e., his ability to understand the proceedings and assist in the preparation of his defense.

During the initial hearing, Wilder coherently answered the trial judge's questions regarding Wilder's age, date of birth, social security number, and address. *Tr.* at 2. Wilder told the judge that he was not under the influence of drugs and did not suffer from any mental or emotional disability that would affect his ability to understand the proceedings. *Id.* The trial judge also confirmed that Wilder understood the allegations against him and then set forth the rights he was entitled to in a criminal prosecution. *Id.* at 3-4. When asked, Wilder confirmed that he had no questions concerning his rights. *Id.* at 4. At the close of the hearing, the trial court appointed a public defender for Wilder. *Id.* at 5.

The jury trial was set for April 1, 2013. During that hearing, and out of the presence of the jury venire, Wilder stated his dissatisfaction with his attorney. *Id.* at 9-10. He also made unusual comments to the court that: he was being "railroaded into prison to appease the powers that be"; "[t]he corruption going on in front of and behind this bench is appalling and unconstitutional"; and that "[y]ou are serving one of two masters, not both, God or

7

Satan or one or the other." *Id*. at 10. Both attorneys stated that they were ready to go to trial that day. Wilder had previously refused to pursue an insanity defense; however, defense counsel stated that Wilder now wanted the trial to focus on "his mental frame or his culpability based on mental illness." *Id*. at 19. Defense counsel noted that he had "some evidence that would support, at least, the insanity instruction." *Id*. at 18.

When the trial judge asked whether Wilder should be evaluated, defense counsel stated, "[W]e haven't asked for competency." *Id*. at 26. The trial court found two issues. "One is competency and I'm not hearing anything about competency to stand trial." *Id*. at 27. The second issue was whether Wilder "had the ability to develop a mens rea at the time that the offense was committed so that's an issue of insanity." *Id*. The trial court asked defense counsel, "I don't hear you saying that you want a competency evaluation, . . . is that right in terms of his ability to participate in trial and to assist or are you asking for that as well?", defense counsel responded, "I suppose I should ask for that as well." *Id*.

The trial court granted defense counsel a ninety-day continuance so that Wilder could be evaluated for competency to stand trial and to determine his mental state at the time of the crimes charged. *Id*. The trial court approved Wilder's request for a psychiatric evaluation on April 23, 2013 and appointed Drs. Krause and Buckles, who filed their reports with the trial court on May 21, 2013 and May 23, 2013, respectively, concluding that Wilder was competent to stand trial. *Appellant's App*. at 68, 72. Drs. Krause and Buckles also testified at trial, restating their respective opinions that Wilder was competent to stand trial.

During trial, Wilder testified in his own defense. Wilder clearly explained that he

was fifty-two years old, grew up in Marion, and had served in the Air Force from 1981 to 1983, at which time he received an honorable discharge. *Tr.* at 190. He attended high school but left nine-weeks shy of graduation. *Id.* at 193-94. Since that time Wilder had worked at various factory jobs. *Id.* at 191. Around the age of twelve years old, Wilder was diagnosed with a psychiatric illness, and he received psychiatric care from the VA during the 1980s and 1990s. *Id.* at 193, 195. From 2008 to 2011, Wilder had a court order to take psychiatric medication. *Id.* at 196. Once the court order expired, Wilder quit taking his medication. *Id.* at 197.

Wilder testified that, prior to the incident, he was not sleeping and did not feel well. *Id.* at 201. In preparation for a medical appointment, he wrote down "eighty-six feelings" he was having that he could not understand. *Id.* at 201. During that same time Wilder requested that a clinic perform a blood test because he thought he was being drugged. *Id.* at 202. Around noon on the day in question, Wilder said he gave his Dad lunch and then was dealing with "manna," which he described as a gift from God. *Id.* at 205. Wilder explained that it was while he was in this state of mind that he encountered T.S. and E.J. Thinking that T.S. was the daughter of Wilder's friend, Wilder asked what they were doing there. When the girls did not respond, Wilder lifted T.S. up and started toward his car with the plan to take the girl back home. When Wilder realized that T.S. was not his friend's daughter, he put her down and returned to his car. Wilder then saw Devine, and concerned that he was "coming after me," Wilder took off at a reckless speed and, ultimately, crashed into a car and then a tree stump. *Id.* at 211-12.

In his testimony, Wilder did not deny that he engaged in a high-speed chase with

9

Devine and that he crashed into another car. *Id.* at 212. He did, however, claim that his interaction with T.S. arose because he was off his medications, wasn't "thinking right that day," and mistook T.S. for his friend's daughter. *Id.* at 216. While it was clear that Wilder had serious mental health issues, those issues did not affect his competency to stand trial. Wilder appeared competent at his initial hearing, he was examined by Drs. Krause and Buckles who concluded that he was competent to stand trial, and Wilder's testimony at trial was coherent and his defense was reasonable. Accordingly, the trial court did not abuse its discretion when it failed to conduct a hearing or make a finding regarding Wilder's competency to stand trial.

Affirmed.

BAILEY, J., and MAY, J., concur.