
FILED

Jan 15 2020, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Emilee A. Grubb
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles E. Barber, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent,* | January 15, 2020 <br><br> Court of Appeals Case No. <br> 19A-PC-1234 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable Jeffrey L. Sanford, <br> Judge <br><br> Trial Court Cause No. <br> 71D03-1712-PC-48 |

**Robb, Judge.**

# Case Summary and Issue

In 1993, Charles Barber pleaded guilty to child molesting, a Class C felony, and was sentenced to eight years. In 2017, Barber filed a petition for post-conviction relief alleging that his counsel was ineffective for failing to request a competency evaluation and that he was denied his right to substantive due process when he pleaded guilty while incompetent. Following a hearing, the post-conviction court denied Barber's petition. Barber now appeals, raising two issues for our review which we consolidate and restate as whether the post-conviction court erred in denying his petition. Concluding Barber did not meet his burden of establishing his claims by a preponderance of the evidence and therefore, the post-conviction court did not clearly err in denying the petition, we affirm.

# Facts and Procedural History

In February 1993, the State charged Barber with child molesting. The trial court appointed Anthony Luber to represent him. In June 1993, Barber pleaded guilty to the charge in exchange for the State agreeing to forego adding an habitual offender enhancement. Barber was thirty-six years old at the time of his guilty plea. He had completed eighth grade but was unable to read or write. At the plea hearing, Luber informed the trial court that Barber was unable to read so Luber had read the plea agreement to him before he signed it. Barber "did ask several questions during that process and some of the terms and phrases were explained to him." Trial Exhibits, Volume 3 at 24. Barber

confirmed to the trial court that his attorney had read the plea agreement to him and they had a chance to talk about it before he signed it. The trial court asked Barber if he had any physical, emotional, or mental condition that would make it difficult for him to understand things or make decisions. Barber answered, "Just . . . reading and writing." *Id.* at 25. The trial court then asked, "But in terms of understanding what people are talking about and what . . . you're deciding . . ., no problem?" *Id.* Barber answered, "No." *Id.* The trial court advised Barber of the rights he would be waiving by pleading guilty and Barber confirmed he understood and indicated he wished to proceed with the guilty plea. Luber then questioned Barber about the precipitating incident in order to lay a factual basis. Barber responded appropriately to questions posed to him during the plea hearing.

[3] Before sentencing, Barber was referred for a diagnostic report from the Indiana Department of Correction ("DOC") because a psychological evaluation was required for him to be considered for a community corrections placement. At the sentencing hearing, Luber acknowledged that Barber "doesn't function at a very high level although he does have some intelligence. . . . He functions very well in an institutional setting. He has been a trustee in the jail because he is reliable. And if he is given a task to do, he does it." *Id.* at 7-8. Luber also referenced the DOC report, which indicated that "while he is illiterate, he does possess enough mental attributes to be able to overcome that." *Id.* at 9. Barber received an eight-year sentence with four and one-half years suspended to

probation, the first year of which was to be served in community corrections. He completed his sentence in October 1999.

[4] On December 8, 2017, Barber filed a pro se Petition for Post-Conviction Relief alleging ineffective assistance of counsel and "knowing & voluntary plea" as grounds for relief. Appendix to Brief of Petitioner-Appellant, Volume Two at 16. The petition was later amended by counsel to elaborate upon those grounds for relief:

> Petitioner Barber was denied his right to substantive due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Sections 12 and 13 of the Indiana Constitution when he pled guilty while incompetent.
>
> * * *
>
> Petitioner Barber was denied his rights to due process of law and the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One, Sections 12 and 13 of the Indiana Constitution, when trial counsel failed to request a competency evaluation.

*Id.* at 31-32. The State's answer asserted the defenses of res judicata, laches, and waiver. At the beginning of the post-conviction hearing, however, the State informed the post-conviction court that it was not proceeding on res judicata or waiver, as Barber had not filed a direct appeal.

[5]     Barber called Attorney Luber to testify during the post-conviction hearing. Luber had no recollection of specific conversations with Barber but described his typical way of handling his cases – for instance, he would usually meet with his clients after he was appointed, read through the discovery, and convey plea offers. When he received a plea offer, he would go through the agreement with his client, and if the client could not read, he would read the agreement to the client.

[6]     With regard to his experience representing incompetent clients in his fifty-year career, Luber noted that there are "two issues dealing with the mental thing. One is whether or not the matter is a defense, and the other is a question about . . . what the person knows and understands and can comprehend [about] what is going on." Transcript of Evidence [from PCR Hearing], Volume 2 at 12. He described his general practice at an initial meeting:

> I try to go through a background with the person [and] I usually get signals about where a person is in some of those things. I ask simple questions . . . [a]nd it gives me a hint about it. . . . And I think I'm sensitive to those things. . . . [I]f I don't think someone is understanding, I usually – it usually gets raised.

Id. at 12-13. Luber recalled that Barber was "clearly in the functioning level and had lived a life and had made adjustments[.] So I didn't think it was a thing that he was acting in a very low IQ kind of [way]." Id. at 14.

[7]     Dr. James Cates also testified at the post-conviction hearing. Dr. Cates is a psychologist who conducted a competency evaluation of Barber for purposes of

his post-conviction relief petition. This was only the second time he had been asked to determine in the present whether someone was competent in the past. Dr. Cates agreed with Luber's assessment that there are two basic types of competency: competency related to mental illness and competency related to intellectual disability. Barber falls into the latter category. Dr. Cates reviewed a number of documents provided to him by Barber's PCR attorney, "[t]he majority of them related to previous assessments which had been completed on Mr. Barber regarding his intellectual abilities regarding his vocational skills." *Id*. at 28. He disregarded some of the reports as "irrelevant." *Id.* at 47. The report with "the most comprehensive scores" was an IQ test from December 16, 1999, in which Barber achieved a "full scale IQ of 57." *Id.* at 29. After his review of these prior reports, Dr. Cates met once with Barber for several hours during which he administered four tests to assess Barber's academic ability and adaptive behavior.[1] Dr. Cates found Barber to be "pleasant, engaging, friendly, and very child-like[,]" *id.*, but his vocabulary was "much more limited" than he would expect from an adult, *id.* at 30. Results from the testing in 2018 showed Barber had a full scale IQ of 46, which Dr. Cates described as "rais[ing] a red flag that this is probably an individual who is going to have significant difficulty understanding what's going on in the courtroom and being able to assist their attorney in any kind of defense." *Id.* at 34. Dr. Cates testified that the change

---

[1] Dr. Cates described adaptive behavior as "a measure of . . . how well he does with activities of daily living" with respect to communication, daily living skills, and socialization. *Id.* at 37.

in IQ from 1999 to 2018 was not a "big difference[.]" *Id.* at 53. He acknowledged that the scores in and of themselves do not indicate incompetence, but the low academic ability indicated by Barber's scores cause concern that "even if information is read to him, he is going to have tremendous difficulty understanding it." *Id.* at 37. Dr. Cates thinks he can "do a pretty good job of assessing people's IQ just on the fly[,]" but after meeting Barber, "I would never have assessed him as low functioning as he is." *Id.* at 58.

[8] Dr. Cates' conclusion, "based on both historical data and the data [he] collected" about Barber's academic ability and adaptive behavior, was that Barber "is not now competent and was not competent in prior time to stand trial." *Id.* at 42. With regard to Barber's past competence, Dr. Cates opined that Barber "has been intellectually disabled across his life. . . . The records suggest a long standard pattern of intellectual disability, of poor adaptive functioning." *Id.* Although Barber suffered a stroke in 2017 that caused increased difficulty with his memory and numbness on his left side, Dr. Cates stated that "there is not evidence that [the stroke] has significantly impaired his intellectual functioning or changed his intellectual functioning from what it was previously." *Id.* Dr. Cates' opinion as to Barber's competence at the time he pleaded guilty in this case was that "his competence in 1993 would not have been there. He was not competent in 1993." *Id.* at 43.

[9] The parties stipulated that the Indiana State Police detective who had investigated Barber's 1993 case died in 2015. Additionally, the court took

judicial notice of the "flat file" in the criminal case. *Id.* at 63. The "flat file" apparently contained some but not all of the pleadings and documents from the underlying case. *See id.* at 22 (post-conviction court noting and the State agreeing the pre-sentence investigation and DOC diagnostic report were not contained in the "flat file" and therefore not part of the trial court's record).[2]

The post-conviction court entered findings of fact and conclusions of law denying Barber's petition. Specifically, the post-conviction court concluded:

> In this particular case, this Court need only look at the first prong of the *Strickland* test. [Barber] appeared before the [trial c]ourt on April 1, 8, June 11, 17, 18, July 16, September 22, 29, October 4, 5, 1993. When he pled, Barber answered negatively that he had a mental condition that would make it difficult for him to understand. He just couldn't read or write.
>
> * * *
>
> This Court finds, based on the evidence presented, that Mr. Luber's performance did not fall below an objective standard of reasonableness based on prevailing norms. [Barber] appeared numerous times in court, and the Judge detected no mental health issues and the DOC detected no IQ issues. There is nothing in the record that would have tipped off Luber there was a problem. This Court cannot hold that Mr. Luber's performance was deficient.

---

[2] The State's proposed findings and conclusions contain many citations to the flat file. *See* App. to Br. of Petitioner-Appellant, Vol. Two at 60-80. The materials from the flat file were not made a part of the record submitted to this court on appeal, however, and we do not have access to them.

Appealed Order at 5-6.[3]

# Discussion and Decision

## I. Post-Conviction Standard of Review

[11] Barber appeals the denial of his petition for post-conviction relief. Post-conviction proceedings are not a "super-appeal." *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013). Rather, they provide "a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal." *Id.*

[12] Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who has been denied relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). To prevail, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006). When reviewing the post-conviction court's order denying relief, we will "not defer to the post-conviction court's legal conclusions," and the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm

---

[3] The post-conviction court did not separately address Barber's standalone claim that his plea was not knowing and voluntary.

conviction that a mistake has been made." *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## II. Laches

[13] The State asserts that Barber's claims are barred by laches and should not be considered on the merits. Laches arises when a party neglects to raise a known claim for an unreasonable period of time resulting in prejudice to the opposing party. *Edmonson v. State*, 87 N.E.3d 534, 537 (Ind. Ct. App. 2017). But laches implies something more than the lapse of time; it requires some change of circumstances that makes the relief sought inequitable. *Kosciusko Cty. Cmty. Fair, Inc. v. Clemens*, 116 N.E.3d 1131, 1139 (Ind. Ct. App. 2018). The State, having the burden of proving the affirmative defense of laches, must therefore prove by a preponderance of the evidence that Barber unreasonably delayed in seeking relief *and* that it was prejudiced by the delay. *Balderas v. State*, 116 N.E.3d 1141, 1143 (Ind. Ct. App. 2018). In a post-conviction context, "prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution." *Armstrong v. State*, 747 N.E.2d 1119, 1120 (Ind. 2001).

[14] Although the State informed the post-conviction court at the beginning of the post-conviction hearing that it was pursuing the defense of laches and entered

into evidence a stipulation that the investigating officer was deceased, the State did not present any argument or other evidence regarding laches and specifically, prejudice. It offered no evidence about the whereabouts or availability of the victim or the victim's mother or the possibility that the officer's notes or the statements he took still exist in some form, and it appears at least some parts of the State's and trial court's files still exist. *See supra* n.2; *see also* Tr., Vol. 2 at 22 (State referencing documents from the criminal case that were in the prosecutor's office's files). Importantly, the post-conviction court made no findings about laches, and we therefore presume it concluded the State had not proven that defense. Although the passage of time between Barber's guilty plea and his petition for post-conviction relief – twenty-four years – is considerable, we conclude the State failed to make the required showing of prejudice and we decline to decide this case on the basis of laches given the record before us.

## III.  Ineffective Assistance of Counsel

[15]     Barber claims the post-conviction court erred in concluding his trial counsel's assistance was not ineffective when he did not request a competency evaluation prior to allowing him to plead guilty. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel and mandates "that the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotation omitted).

[16] Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687, 694). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id*. To meet the test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. When we consider a claim of ineffective assistance of counsel, we apply a "strong presumption . . . that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

[17] Because Barber was convicted pursuant to a guilty plea, we also analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* identifies two main types of ineffective assistance of counsel claims with regard to guilty pleas: failure to advise the defendant on an issue that impairs or overlooks a defense and incorrectly advising the defendant about penal consequences.

*Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*; *cert. denied*, 135 S.Ct. 2376 (2015). Barber's claim, that his trial counsel failed to investigate a possible defense, appears to fall into the first category. To establish a claim of ineffective assistance of trial counsel following a guilty plea where the alleged error is one that would have affected a defense, the petitioner must show a reasonable probability of success on the merits. *Segura*, 749 N.E.2d at 503. In other words, to show prejudice, Barber must prove that "a defense was indeed overlooked or impaired and that the defense would have likely changed the outcome of the proceeding." *Maloney v. State*, 872 N.E.2d 647, 650 (Ind. Ct. App. 2007).

[18] Barber contends that had Luber investigated his competency and requested a competency hearing, there is a reasonable probability he would have been found incompetent. A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. *Mast v. State*, 914 N.E.2d 851, 856 (Ind. Ct. App. 2009), *trans. denied*; *see also* Ind. Code § 35-36-3-1(a). Due process precludes convicting and sentencing an incompetent defendant. *Gross v. State*, 41 N.E.3d 1043, 1047 (Ind. Ct. App. 2015). Indiana statutes "control the appropriate way to determine a defendant's competency and, if necessary, to commit the defendant and provide restoration services." *Curtis v. State*, 948 N.E.2d 1143, 1153 (Ind. 2011); Ind. Code ch. 35-36-3. When there is reason to believe a criminal defendant lacks the ability to understand court proceedings and assist his attorney, the trial court should set a hearing and appoint two or three

disinterested professionals to evaluate his competency. *Gross*, 41 N.E.3d at 1047; *see also* Ind. Code § 35-36-3-1(a). If, after a hearing at which evidence pertaining to the defendant's competency is presented, the trial court determines the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the trial will be delayed while the defendant undergoes competency restoration services. Ind. Code § 35-36-3-1(b). But the right to a competency hearing is not absolute. *Campbell v. State*, 732 N.E.2d 197, 202 (Ind. Ct. App. 2000). Such a hearing is required only when the trial court is confronted with evidence creating a bona fide doubt as to a defendant's competency. *Mast*, 914 N.E.2d at 856. The presence of indicators that would require the court to conduct a hearing under Indiana Code section 35-36-3-1 are determined on the facts of each case. *Id.*

[19] Here, the evidence Barber presented at the post-conviction hearing does not lead unerringly and unmistakably to the conclusion that his trial counsel's performance fell below an objective standard of reasonableness with regard to investigating Barber's competence. During the underlying criminal proceedings, Luber was aware that Barber was illiterate, but noted at the post-conviction hearing that "[n]ot being able to read does not necessarily mean that you're low intellectual level [and] the fact that you can read doesn't necessarily mean that you don't have a deficiency in your comprehension and understanding." Tr., Vol. 2 at 15-16. At Barber's plea hearing, Luber indicated that when he read the plea agreement to Barber, Barber asked several questions and Luber explained certain terms and phrases to him. At Barber's sentencing

hearing, Luber told the trial court that Barber "doesn't function at a very high level," but noted that he had "some intelligence" and was reliable and able to complete assigned tasks. Trial Exhibits, Vol. 3 at 7. The DOC report indicated that he "possess[ed] enough mental attributes" to overcome his illiteracy. *Id.* at 9. And the trial court, in front of which Barber had appeared numerous times and which received the DOC diagnostic report, apparently believed that when Barber said he had no mental condition that would prevent him from understanding the proceedings and making appropriate decisions, he was telling the truth. At the post-conviction hearing, Luber testified that he did not recall the specifics of Barber's case, but that he generally asked questions of his clients that would give him "signals" as to a client's comprehension and if he did not think someone was understanding what was going on, "it usually [got] raised." Tr., Vol. 2 at 12-13. He did recall that Barber was "clearly in the functioning level" and he did not think there was any reason to question that Barber was competent to understand the proceedings and assist in his defense. *Id*. at 14.

[20] Dr. Cates opined Barber would not have been competent in 1993; however, his testimony mostly concerned Barber's intellectual and adaptive state years after the guilty plea. Even accepting Dr. Cates' opinion in 2019 that Barber was not competent twenty-five years earlier, Dr. Cates also stated that although he can generally assess people's IQ even before receiving test results, he was surprised after meeting Barber that his scores were so low. If Barber presented to an expert in the field as functioning at a higher level than his scores would

indicate, we cannot say that Luber should have been able to recognize his competency might be an issue.

[21] We also note that during the underlying proceedings in 1993, the State considered filing an habitual offender enhancement against Barber, indicating that he had at least two prior felony convictions at that time. *See* Ind. Code § 35-50-2-8 (1990). Despite Dr. Cates' testimony that the historical data "spoke in terms of a mild mental retardation consistently across time[,]" Tr., Vol. 2 at 28, there is no evidence in the record that Barber's competency was questioned during those earlier proceedings. And given the fact that Barber appeared before the trial court on ten occasions in this case and the trial court found no reason to question Barber's competency, we cannot say that if Luber had filed a request for a competency examination, the trial court would have had a bona fide doubt about his competency, granted the request, and found him incompetent. *See Campbell*, 732 N.E.2d at 202 ("A trial judge's observations of a defendant in court are an adequate basis for determining whether a competency hearing is necessary[.]").

[22] Under these facts and circumstances, Barber has failed to prove by a preponderance of the evidence that Luber's performance was deficient in overlooking a valid defense or that the defense, if raised, would have likely changed the outcome of this proceeding. *See Maloney*, 872 N.E.2d at 650. There is simply no contemporaneous evidence that casts doubt on his competence in 1993. Therefore, the post-conviction court did not clearly err in

determining that Luber's failure to investigate Barber's competence or seek a competency hearing was not ineffective assistance.

## IV.  Knowing and Voluntary Guilty Plea

[23]  Barber also claims that he is entitled to post-conviction relief because his guilty plea was not knowing and voluntary as he was incompetent at the time he entered the plea.  Because a guilty plea constitutes a waiver of constitutional rights, the defendant's decision to plead guilty must be knowing, voluntary, and intelligent.  *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996).  But a defendant cannot knowingly and voluntarily waive his constitutional rights if he is not sufficiently competent to do so.  *See Suldon v. State*, 580 N.E.2d 718, 720 (Ind. Ct. App. 1991).  As stated above, a defendant is not competent when he is unable to understand the proceedings and assist in the preparation of his defense.  Ind. Code § 35-36-3-1(a).  The conviction of an incompetent defendant is a denial of due process.  *Faris v. State*, 901 N.E.2d 1123, 1125 (Ind. Ct. App. 2009), *trans. denied*.

[24]  Barber argues that Dr. Cates' testimony shows he was incompetent in 1993 and asserts that his conviction and sentence should be vacated as a result.  A petitioner may make a substantive due process competency claim by alleging that he was, in fact, tried and convicted while incompetent.  *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992).  Trying an incompetent defendant is an undue process regardless of whether any person could have or should have diagnosed the defendant's incompetency at the time.  *Id.* at 1573.  Thus, our

decision regarding ineffective assistance of counsel, though informative, is not dispositive of this claim. To prove a substantive competency claim, the petitioner must present clear and convincing evidence "creating a 'real, substantial, and legitimate doubt' as to his competence[.]" *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (quoting *James*, 957 F.2d at 1573).

[25] We note at this point that Barber essentially asked the post-conviction court, and now this court, to determine whether or not he was competent in 1993 based on the testimony given at the post-conviction hearing. However, as noted above, when there is a bona fide reason to believe a defendant is incompetent, the procedures to be followed are outlined in Indiana Code section 35-36-3-1, which requires the appointment of at least two medical professionals to examine the defendant and testify at an evidentiary hearing. At the evidentiary hearing, "other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense may be introduced." Ind. Code § 35-36-3-1(b). The post-conviction hearing was *not* the required evidentiary hearing. Thus, the only relief that could be granted here is to remand the issue to the trial court to conduct the appropriate competency hearing if Barber's evidence shows a "real, substantial, and legitimate doubt" about his competence in 1993. *Medina*, 59 F.3d at 1106; *see also James*, 957 F.2d at 1575 (court, after reviewing petitioner's allegations of actual incompetency and finding that he presented clear and convincing evidence raising a substantial doubt as to his competency, remanding to the district court to conduct an evidentiary hearing on his claim).

Twenty-four years passed between Barber's guilty plea and his petition alleging he was incompetent at the time he pleaded. Barber's evidence that he was incompetent in 1993 consists primarily of evidence that he was illiterate and had a low IQ. However, as Luber pointed out, an inability to read does not necessarily equate to an inability to understand and vice versa. *See* Tr., Vol. 2 at 34, 36. And a low IQ does not necessarily indicate an inability to comprehend legal proceedings, especially where the defendant is assisted by counsel, adequately advised of his rights, and has experience with the criminal courts. *See Anness v. State*, 256 Ind. 368, 370-71, 269 N.E.2d 8, 10 (1971) (addressing defendant's waiver of the right to trial by jury). Barber also relies on Dr. Cates' opinion, based on his review of historical data and the results of tests he conducted, that Barber's "competence in 1993 would not have been there." Tr., Vol. 2 at 43. But in reaching that opinion, Dr. Cates disregarded some of the historical data as irrelevant and the earliest data he cited was from 1999, six years after Barber pleaded guilty. Additionally, Dr. Cates' testing was conducted after Barber suffered a stroke. Although Dr. Cates expressed a clear opinion, the post-conviction court was free to reject the expert testimony. *See Fisher*, 810 N.E.2d at 679 (stating the post-conviction court is the sole judge of witness credibility).

Barber contends that *all* the evidence from the post-conviction hearing leads to only one conclusion: that he was incompetent when he pleaded guilty. *See* Reply Brief of Petitioner-Appellant at 11. However, Barber offered no contemporaneous medical or psychological evidence of his competence in

1993. Neither Luber nor the trial court, who were in the position to interact with Barber before and during the proceedings, indicated any concerns about Barber's competence at the time. And Luber testified at the post-conviction hearing that although Barber had an intellectual disability, his interactions with Barber during the proceedings in 1993 did not lead him to believe Barber's competence was an issue. The transcripts of the guilty plea and sentencing hearings show that Barber affirmatively denied any mental defect affecting his ability to understand the proceedings and make decisions, and he responded appropriately to all questions posed to him in court. Thus, all the contemporaneous evidence from 1993 indicates Barber was competent to knowingly and voluntarily enter a guilty plea and the contrary evidence offered by Barber fails to create a real, substantial, and legitimate doubt as to that fact.

[28] Barber did not show the evidence as a whole leads unerringly and unmistakably to the conclusion that he was incompetent when he pleaded guilty in 1993. Therefore, the post-conviction court did not clearly err in denying Barber's claim for post-conviction relief.

# Conclusion

[29] Our review of the post-conviction court's judgment does not leave us with the conviction that a mistake has been made: Barber did not prove by a preponderance of the evidence that his trial counsel was ineffective in failing to request a competency hearing or that he was in fact incompetent at the time he

pleaded guilty. We therefore affirm the post-conviction court's order denying Barber's petition for post-conviction relief.

[30] Affirmed.

Pyle, J., concurs.

Mathias, J., concurs with separate opinion.

# COURT OF APPEALS OF INDIANA

Charles E. Barber,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent,*

Court of Appeals Case No.
19A-PC-1234

**Mathias, Judge, concurring.**

[1] I write only to reiterate that competency evaluations immediately upon arrest are the best way for our criminal justice system to fairly treat those defendants who are mentally ill or deficient. At some point, such immediate competency evaluations will be recognized as an integral part of due process. See *Wampler v. State,* 67 N.E.3d 663 (Ind. 2017).